[No. 30019. Department One.   February 14, 1947.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
RICHARD LINDSEY, *Appellant.*[1]

*Ray R. Greenwood* and *Roy A. Holland,* for appellant.

*Lloyd Shorett* and *Duane T. Shinn,* for respondent.

ABEL J.—Defendant was found guilty by a jury of the
crime of murder in the first degree, and of first-degree
assault committed by shooting the deceased and defendant's
wife.

The first assignment of error pertains to the court's
failure to give a requested instruction. However there was
no error in this, for the reason that the instruction was
principally a restatement of the evidence submitted by
defendant.

The second assignment of error is that the trial court
overruled defendant's motion for a new trial. The ground
of this assignment is because of the alleged misconduct of
the deputy prosecuting attorney in his cross-examination

[1] Reported in 177 P. (2d) 387.

of defendant. The direct and cross examination of defendant concerning a prior conviction is as follows:

DIRECT EXAMINATION: "Q. Seventeen. You got into some trouble in Indiana as I understand it. A. Yes. Q. And you were in prison for a time? A. I was in the reformatory in Indiana. Q. Reformatory. That was for an assault? A. Yes sir. Q. And you were pardoned from that later on? A. I got a governor's parole."

CROSS-EXAMINATION: "Q. (By Mr. Shinn) First let's talk about this conviction you had in Indiana. You admit you were convicted? A. I was. Q. *It grew out of an attempted robbery,* didn't it? MR. GREENWOOD: Just a minute. Your Honor, I object. He can ask him if he was convicted of a certain crime, and I think that is the extent of it. He can answer yes or no, and I don't think Counsel is entitled to go further into it, unless he—I am confident he isn't, of this witness. MR. SHINN: Your Honor, this case involves insanity, where you can go a whole lot further than you can in ordinary questioning regarding a conviction. MR. GREENWOOD: It has nothing to do with insanity. THE COURT: *You may ask him what he was convicted of, Mr. Shinn.* MR. GREENWOOD: Yes. MR. SHINN: *I know that is the usual rule, but I understood that in insanity that this man's life is an open book.* MR. GREENWOOD: No. The only purpose he can ask this question is to affect his credibility. THE COURT: I think you can inquire into what the offense was of which he was convicted. Q. (By Mr. Shinn) What was the offense regarding which you were convicted? A. *I was convicted of assault and battery with intent to commit a felony and conspiracy of a felony.* Q. What felony? A. Well, there was no felony. That was the charge. Q. Well, what was the felony? There was some felony involved. MR. GREENWOOD: I object to any further questioning along that line. He has now answered the question. He could try that case all over if he could start in. MR. SHINN: We have a right to know what felony it was, Your Honor. MR. GREENWOOD: I don't know. You should have a certified copy of it. MR. SHINN: That is not necessary and you know it. MR. GREENWOOD: I don't know it. I know that it is, and if he is permitted to start along that line he could go on and on and try that all over again. THE COURT: No, we will—MR. GREENWOOD: I think that the question is for one purpose only. It is a yes or no answer, he has been convicted of a felony, and further than that I object to any further questioning. THE COURT: Well, he may ask what is the

felony. MR. GREENWOOD: Yes. He asked that and it is answered. THE COURT: I don't think so. You may answer what the felony charge was that you were convicted of. THE WITNESS: *Well, we were tried on*—well, we were found *convicted*—*found guilty of assault and battery with intent to commit a felony. It was alleged that we had robbed a man, but it wasn't proved.* Q. (By Mr. Shinn) Well, we are not going into details about whether you were rightfully convicted or not. MR. GREENWOOD: Well, never mind, now. He wasn't convicted of the charge of which he now speaks. 'What were you actually convicted of?' That is what the question is, I think. THE WITNESS: *We were convicted of assault and battery with intent to commit a felony and conspiracy to commit a felony. They run concurrent, they were both together.* Q. (By Mr. Shinn) *The felony was robbery, wasn't it?* MR. GREENWOOD: I object to that as— A. *Well, we were charged with robbery, but we wern't convicted of robbery.* Q. (By Mr. Shinn) *Well, what was the felony you were convicted of?* MR. GREENWOOD: Just a minute. He wasn't convicted of that, he says. I object to any further questions along this line. He was convicted— THE COURT: Sustained. Q. (By Mr. Shinn) *Did anybody die as a result of that?* MR. GREENWOOD: Just a minute. I object to it and move the jury be instructed to disregard that question. Counsel knows how improper that is. THE COURT: Objection sustained. The jury will disregard the question. Q. (By Mr. Shinn) *How much time did you serve in the reformatory as a result of that crime?* MR. GREENWOOD: Objected to as improper, and I think Counsel should now be instructed not to go further along this line. THE COURT: Well, the witness has spoken of that already, as to the time he was there. Objection overruled. A. I served a year and nine months. . . . Q. *Now, having been convicted of a felony didn't you realize that it was against the law for you to possess a gun?* MR. GREENWOOD: Just a minute. I object to that as improper cross-examination, incompetent and immaterial. THE COURT: I will sustain it for another reason. MR. GREENWOOD: The purpose of the question is plainly just to overemphasize that point, and it is only admissible for one purpose. THE COURT: I have sustained the objection. MR. GREENWOOD: Yes. Q. (By Mr. Shinn) Did you secure a permit to purchase or to carry a gun? MR. GREENWOOD: The same objection. THE COURT: Objection overruled. Q. (By Mr. Shinn) Did you? A. No. Q. *When you came to Seattle did you register with the police as an ex-convict?*

Mr. Greenwood: Oh, just a minute. If Your Honor please, now he is attempting to degrade this man. The Court: Objection sustained. The jury will disregard the question." (Italics ours).

The deputy prosecuting attorney stated that he knew what the usual rule was; however, he added, ". . . but I understood that in insanity that this man's life is an open book."

After obtaining from the defendant the information that he had been convicted of a specific crime, the deputy prosecutor proceeded to ask the defendant:

(1) "The felony was robbery, wasn't it?" (2) "Well, what was the felony you were convicted of?" (3) "Did anybody die as a result of that?" (4) "How much time did you serve in the reformatory as a result of that crime?" (5) "Now, having been convicted of a felony, didn't you realize that it was against the law for you to possess a gun?" (6) "When you came to Seattle, did you register with the police as an ex-convict?"

Respondent justifies this cross-examination by citing the holding of this court in *State v. Brames,* 154 Wash. 304, 282 Pac. 48, and *State v. Kelly,* 187 Wash. 301, 60 P. (2d) 50.

In *State v. Brames, supra,* the defendants were charged on several counts with violations of the state liquor laws, and during cross-examination of one of the defendants, the following question was asked and answered: "Q. From 1922 up to the present time, you have made your living selling intoxicating liquor? A. No, sir, I don't make my living from liquor." This court stated that this question was not prejudicial and made the following quotation from *State v. Gleen,* 135 Wash. 153, 237 Pac. 292: "If it be conceded that the court erred in his ruling, it must be held that the error was without prejudice because the witness answered in the negative."

In the same case (*State v. Brames, supra*), this court stated as follows:

"Equally without merit is the assignment that the court erred in permitting the prosecuting attorney to cross-examine the appellants regarding the nature and details of prior convictions."

Cross-examination regarding the nature and details of the prior convictions is not set out. However, the court quotes at length from the case of *State v. Steele,* 150 Wash. 466, 273 Pac. 742. Referring to the latter case, we find the following statement:

"In his cross-examination by the attorney for the state, the fact was elicited that he theretofore had been convicted of a crime. The state's attorney then questioned him as to the nature of the crime he had committed and the extent of the punishment that had been inflicted upon him."

This court then adopted the principle that it was proper to show the nature of the offense of which the defendant was convicted and the extent of the punishment, for the reason that these matters were set forth in the judgment of conviction.

*State v. Kelly, supra,* was a case where the defendants were charged in different counts with the crime of forcible rape and with being personally present and aiding and abetting. While the crime was being committed, defendant stole some money from the prosecuting witness. On p. 307, the court states as follows:

"Over objection, evidence was permitted as to the taking of the thirteen dollars in money from the purse of Miss Johnson, which Floyd Kelly admitted that he had done. That crime was closely associated with the crime for which the accused were being tried, and furnished evidence which was material and proper. Testimony connecting a defendant with another and distinct crime, if it is closely associated with the crime charged and furnishes evidence material to that crime, is admissible."

In the recent case of *State v. Stevick,* 23 Wn. (2d) 420, 161 P. (2d) 181, Judge Simpson reviewed the cases from this state where the court passed upon questions concerning the conduct of counsel in civil and criminal cases. In the following cases, a conviction was reversed because of the conduct of counsel: *State v. Montgomery,* 56 Wash. 443, 105 Pac. 1035; *State v. Devlin,* 145 Wash. 44, 258 Pac. 826; *State v. Carr,* 160 Wash. 83, 294 Pac. 1016; *State v. Tweedy,* 165 Wash. 281, 5 P. (2d) 335; *State v. Sang,* 184

Wash. 444, 51 P. (2d) 414; *State v. Smith,* 189 Wash. 422, 65 P. (2d) 1075; see, also, *Warren v. Hynes,* 4 Wn. (2d) 128, 102 P. (2d) 691.

In the case of *State v. Stevick, supra,* the objectionable questions pertained to the alleged commission of other crimes, and the court, after reviewing the above-cited cases, concluded as follows:

"A study of the foregoing cases demonstrates that reference to specific acts of misconduct cannot be made to expose the witness to ridicule or to discredit him in the minds of the jury. The conduct upon which we have reversed judgments in the above cases was mild compared to the actions of the state's attorney in this case. By repeated questions the deputy prosecuting attorney accused appellant of being a prostitute. Not only that, but he made the same accusation concerning one of appellant's witnesses. The state did not attempt to prove former convictions indicated by the questions. In this day in which criminal records are quite complete and available to all prosecuting officials, there is no excuse for asking questions concerning former convictions at random."

In *State v. Montgomery, supra,* Judge Rudkin stated as follows:

"It is not our purpose to condemn the zeal manifested by the prosecuting attorney in this case. We know that such officers meet with many surprises and disappointments in the discharge of their official duties. They have to deal with all that is selfish and malicious, knavish and criminal, coarse and brutal in human life. But the safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded, and such officers are reminded that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for. Their devotion to duty is not measured, like the prowess of the savage, by the number of their victims."

Judge Mitchell stated, in the case of *State v. Devlin, supra:*

"The question involved is that of a fair and impartial trial. In *State v. Pryor,* 67 Wash. 216, 121 Pac. 56, this court said:

" 'A fair trial consists not alone in an observation of the naked forms of law, but in a recognition and a just application of its principles.'

"It is the law of the land, a right vouchsafed by the direct written law of the people of the state. It partakes of the character of fair play which prevades all the activities of the American people, whether in their sports, business, society, religion or the law. In the maintenance of government to the extent it is committed to the courts and lawyers in the administration of the criminal law, it is just as essential that one accused of crime shall have a fair trial as it is that he be tried at all, whether he be guilty or not, has his picture in the rogue's gallery or not. In the *Pryor* case just referred to, it was said that it must be remembered, as stated in *Hurd v. People,* 25 Mich. 404, 'that unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained is unjust and dangerous to the whole community.' "

In the case at bar, the deputy prosecuting attorney had a right to ask the defendant concerning his conviction and the term of his sentence. The state did not have proof of any other conviction. There could be only one result of the questions concerning other crimes. That was to hold the defendant up to ridicule and to discredit him in the minds of the jury. It is not conceivable that he could have a fair trial when the deputy prosecuting attorney insinuated that he had killed another person at a different time in an attempted robbery; or that someone had died as a result of some other crime that the defendant had committed; or that defendant should have registered with the police as an ex-convict.

In all our jurisprudence there is nothing more sacred than the right of a fair trial, and while we commend all officers for their zeal and devotion to duty, we say to them, as Judge Rudkin did: "Their devotion to duty is not measured like the prowess of a savage, by the number of their victims."

Judgment is reversed, and the cause remanded for a new trial.

MILLARD, SIMPSON, and SCHWELLENBACH, JJ., concur.

MALLERY, C. J., dissents.

On Rehearing.
[*En Banc.*   June 20, 1947.]

Per Curiam.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.