[No. 52520–0.   En Banc.   October 1, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD J. NEWTON, *Petitioner.*

*Stewart A. Johnston,* for petitioner.

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* for respondent.

UTTER, J.—Donald Newton appeals his convictions in a jury trial for forgery and second degree possession of stolen property. Over defendant's objection, the trial court explored the underlying facts of a prior conviction to determine whether it was admissible as a crime involving "dishonesty or false statement" under ER 609(a)(2). The trial court then permitted the admission, for impeachment purposes, of Newton's prior conviction for third degree theft. We reverse and remand for a new trial.

Reference to prior crimes for impeachment purposes in a criminal trial has extraordinary potential for misleading and confusing a jury into believing it is being told that defendant is a "bad" person and therefore guilty of the crime charged. Accordingly, we construe the rule narrowly. This danger is illustrated by a statement made by the prosecutor in this case. In his closing argument, the prosecutor made the following statement:

> No, Donald Newton probably didn't do everything that you would have done if you had been in his situation. But that doesn't mean a whole lot, because none of you would ever have been in his situation. *He's a criminal, and you're not.* It says something very profound about the difference between you, the jury, and Donald Newton. *People who get in this kind of trouble are different from other kinds of people. They behave differently. Their response to many situations is not identical to the response of a law–abiding citizen. That's why they end up being criminals.*

(Italics ours.) Verbatim Report of Proceedings, at 375–76.

The trial court's inquiry into the facts of a prior conviction for purposes of determining whether it may be admitted for impeachment purposes under ER 609(a)(2) shall be limited to the elements and date of the prior conviction, the type of crime, and the punishment imposed. This holding is in keeping with our traditional insistence that juries undertake their truthfinding function based on information directly relevant to the case at bar. Our legal tradition has long recognized the fundamental unfairness of convicting defendants because of their "bad character," and has required the State to prove defendants guilty of the crime with which they have been charged. Our holding today affirms and underscores these important concerns.

An understanding of the facts of this case is particularly necessary to appreciate the central role that the jury's assessment of Newton's credibility played in his conviction. Donald Newton was a friend of Father Eugene Kellenbenz. On March 21, 1982, Newton checked into a motor lodge in Tacoma, and presented a credit card bearing the name "Eugene Kellenbenz" to the desk clerk. When he checked out on April 5, 1982, Newton signed Kellenbenz' name to the charge form. Thereafter, Newton traveled with another person in Kellenbenz' car to Minnesota.

Kellenbenz was reported missing on March 20, 1982. On April 12, Tacoma police found his body in his apartment. The pathologist who conducted the autopsy concluded that Kellenbenz had been dead for some time, and that the death had been accidental. By early May, investigation of Kellenbenz' death led the police to Newton, who was by that time in Minnesota. After his return to Tacoma, Newton told the police that Kellenbenz had allowed him to take over payments on the car in repayment of a loan, and had given Newton permission to use the credit card for room and board on his trip to Minnesota.

At the outset of Newton's trial for forgery and possession

of stolen property in the second degree, the defense moved in limine to prohibit the State from offering evidence of a prior conviction for third degree theft. The State wished to offer the evidence to impeach Newton if he chose to testify. The court ruled the prior conviction involved dishonesty, and was therefore admissible for impeachment purposes under ER 609(a)(2). The defense renewed its motion later in the trial. The trial judge deferred final ruling pending examination of the court file under which the theft conviction was entered. The judge later informed the attorneys, outside the jury's presence, that Newton's statement on plea of guilty specified that the property taken was a credit card. At that point, the trial judge confirmed his earlier tentative overruling of petitioner's motion to exclude evidence of the prior conviction. Newton admitted, under cross examination, that he had previously been convicted of theft in the third degree. The jury was not made aware of any of the underlying details of that conviction.

In his testimony at trial, Newton admitted using the credit card and car, but insisted that Kellenbenz, as a personal friend, had given him permission to do so. Newton testified he had previously loaned Kellenbenz $1,650. Later, Newton needed to go to Minnesota for business and medical reasons, but had little money. Newton said that Kellenbenz could not repay the loan at that time, so he gave Newton his credit card to use for trip expenses and allowed him to drive his car. According to the State, Newton entered Kellenbenz' apartment, discovered his dead body, and removed his belongings, including the credit card. The State argued that Newton wished to acquire money and a new identity, and so absconded with Kellenbenz' credit card and car. At trial, the single major fact at issue was whether Newton had received permission from Father Kellenbenz to use his credit card, or whether the priest was already dead at the time Newton took the card and so could not have given his permission. The jury's assessment of Newton's credibility was absolutely essential to their verdict. At the close of the trial, the jury found Newton

guilty on both counts.

The defense raised the issue of the admission of the prior conviction again in its motion for a new trial, relying on a then recent case, *State v. Zibell,* 32 Wn. App. 158, 646 P.2d 154, *review denied,* 97 Wn.2d 1039 (1982). In that case, Division One of the Court of Appeals, by a 2–to–1 majority, adopted a narrow definition of crimes involving "dishonesty or false statement" under ER 609(a)(2), and held that a conviction for third degree possession of stolen property is not such a crime. The trial court denied the motion and expressly rejected the reasoning in *Zibell* by adopting the rule of the dissenting opinion.

I

As noted by Justice Brachtenbach in his dissent in *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984),[1] there are basically two ways in which prior conviction evidence may unfairly prejudice a criminal defendant's right to a fair trial. 3 J. Weinstein & M. Berger, *Evidence* ¶ 609[02], at 609–54 (1982). The jury may assume, first, that the person with a criminal record has a "bad" general character, and deserves to be sent to prison whether or not they in fact committed the crime in question. Second, the jury may perceive the prior convictions as proof of the defendant's criminal propensities, making it more likely the defendant committed the crime charged. *Burton,* at 18–19 (Brachtenbach, J., dissenting). Statistical studies show that, even with limiting instructions, juries are far more likely to convict defendants with criminal records than defendants without records. H. Kalven & H. Zeisel, *The American Jury* 161 (1966); *State v. Lindsey,* 27 Wn.2d 186, 177 P.2d 387, 181 P.2d 830 (1947). Commentators have criticized the assumption that juries are able to segregate the evidence

---

[1]In his dissent, Justice Brachtenbach advocated following the State of Montana in proscribing the use of any prior conviction to impeach witnesses, although he would add the proviso that prior convictions could be introduced to impeach the testimony of witnesses who had first introduced evidence to support their own credibility. *Burton,* at 23.

according to its permissible uses. For example, jury test results cited in a study conducted by the University of Chicago disclosed that jurors have an

> almost universal inability and/or unwillingness either to understand or follow the court's instruction on the use of defendant's prior criminal record for impeachment purposes. The jurors almost universally used defendant's record to conclude that he was a bad man and hence was more likely than not guilty of the crime for which he was then standing trial.

Note, *Other Crimes Evidence at Trial: Of Balancing and Other Matters*, 70 Yale L.J. 763, 777 (1961) (quoting from letter from Dale W. Broeder, Associate Professor, the University of Nebraska College of Law, who conducted intensive jury interviews, to Yale Law Journal, dated March 14, 1960, on file in the Yale Law Library). These considerations often have a strong negative impact upon a defendant's decision to exercise the constitutional right to take the stand and testify in one's own defense. Note, *To Take the Stand or Not To Take the Stand: The Dilemma of the Defendant With a Criminal Record*, 4 Colum. J.L. & Soc. Probs. 215 (1968).

These are the same considerations underlying the propensity rule of ER 404(b), which prohibits the admission of other crimes, wrongs, or acts to prove the character of a person to show that he or she acted in conformity therewith. The defendant has the right, under ER 105, to have the judge instruct the jury that prior misconduct may not be used to show conformity. We observed, however, in a unanimous opinion following *Burton,* that "[i]t is difficult for the jury to erase the notion that a person who has once committed a crime is more likely to do so again." *State v. Jones,* 101 Wn.2d 113, 120, 677 P.2d 131 (1984).[2]

As a practical matter, prosecutors are aware of the utility

---

[2]*See Krulewitch v. United States,* 336 U.S. 440, 453, 93 L. Ed. 790, 69 S. Ct. 716 (1949) (Justice Jackson's oft-quoted remark: "The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction.").

of such evidence in securing convictions, and the temptations to introduce such evidence in hope of achieving the prohibited prejudicial effect are undoubtedly great. Ladd, *Credibility Tests—Current Trends,* 89 U. Pa. L. Rev. 166, 190 (1941). At Newton's trial, the prosecutor appears to have completely succumbed to the temptation.

## II

The prohibition against introducing evidence of collateral crimes in a criminal prosecution is well established in Washington.

> There is no more insidious and dangerous testimony than that which attempts to convict a defendant by producing evidence of crimes other than the one for which he is on trial, and such testimony should only be admitted when clearly necessary to establish the essential elements of the charge which is being prosecuted.

*State v. Smith,* 103 Wash. 267, 268, 174 P. 9 (1918). In 1936, in *State v. Guthrie,* 185 Wash. 464, 479, 56 P.2d 160 (1936), this court quoted from a federal case with approval as follows:

> "In the civil law, and very early in the common law, evidence of other crimes was admitted on the theory that a person who has committed one crime is apt to commit another. The inference is so slight, the unfairness to the defendant so manifest, the difficulty and delay attendant upon trying several cases at one time so great, and the confusion of the jury so likely, that for more than two hundred years it has been the rule that evidence of other crimes is not admissible."

*Guthrie,* at 479, quoting *Coulston v. United States,* 51 F.2d 178, 180 (10th Cir. 1931).

Since this court adopted ER 609, 91 Wn.2d 1117, 1149 (1979), we have consistently and emphatically expressed our recognition of its extraordinary potential for misleading and confusing a jury. Accordingly, we have uniformly found the rule to be a narrow one. *See* Comment, ER 609, 91 Wn.2d 1150 (1979).

In our first decision concerning ER 609, we noted the danger of admitting evidence of prior convictions in order

to impeach the credibility of a criminal defendant:

> Long ago this court recognized the prejudicial effect to a defendant of bringing evidence of his previous convictions before the jury. *See State ex rel. Edelstein v. Huneke,* 140 Wash. 385, 249 P. 784, 250 P. 469 (1926); *State v. Kirkpatrick,* 181 Wash. 313, 43 P.2d 44 (1935). We said in *State v. Nass,* 76 Wn.2d 368, 371, 456 P.2d 347 (1969):
>
>> It is obvious that evidence of former convictions is so prejudicial in its nature that its tendency to unduly influence the jury in its deliberations regarding the substantive offense outweighs any legitimate probative value it might have in establishing the probability that the defendant committed the crime charged.
>
> The same prejudicial effect exists when the admission of evidence of a conviction is for the purported purpose of helping the jury assess defendant's credibility as a witness.

*State v. Alexis,* 95 Wn.2d 15, 18, 621 P.2d 1269 (1980) (unanimous opinion).

In our first decision construing section (a)(2) of ER 609, this court announced that the scope of crimes involving "dishonesty and false statement" is extremely narrow. *State v. Thompson,* 95 Wn.2d 888, 890, 632 P.2d 50 (1981). In *Thompson,* we observed that some crimes, such as fraud or perjury, speak inherently and directly of the perpetrator's disregard for the truth. On the other hand, there are classes of crimes that speak to the perpetrator's tendency to violence or to other antisocial behavior (and may alienate a jury from the defendant), but bear little or no relevance to the individual's respect for the truth. The latter crimes' utility for impeaching credibility is far more attenuated, and the court is therefore required to undergo the careful balancing set forth in *Alexis.* This determination is made manifest by the distinction between ER 609(a)(1) and ER 609(a)(2). *Thompson,* at 891.

In *State v. Pam,* 98 Wn.2d 748, 761–62, 659 P.2d 454 (1983) (Utter, J., concurring), five justices of this court agreed that a court faced with an offer of prior conviction evidence under ER 609(a)(1) must be particularly conscious

of the potential for prejudice where, as in this case, the prior conviction was for an offense identical to that with which the defendant is charged. We quoted from *Gordon v. United States,* 383 F.2d 936, 940 (D.C. Cir. 1967):

> Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that "if he did it before he probably did so this time." As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity.

The latest statement from this court on ER 609(a)(2) was in *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984). *Burton* announced an extremely restrictive interpretation of the rule, based on our acute recognition of the prejudicial potential of prior conviction evidence.

In *Burton,* the defendant's credibility was impeached, in part, with prior convictions for petit larceny and shoplifting. The Court of Appeals held the prior convictions were admissible under ER 609(a)(2) because "[t]o steal is dishonest." *State v. Burton,* 33 Wn. App. 417, 420, 655 P.2d 259 (1982). This court refused to adopt such an expansive definition of "dishonesty" in the context of ER 609, and held that the prior misdemeanor convictions were not admissible. The *Burton* court expressly adopted the restrictive definition of the phrase "dishonesty or false statement" that emerged from House and Senate debate on the federal evidence rule. The *Burton* majority quoted from a Senate Judiciary Committee report to explain that Congress intended "dishonesty and false statement" to encompass

> crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement or false pretense, or any other offense, in *the nature of crimen*

*falsi*[3] the commission of which involves some element of untruthfulness, deceit or falsification bearing on the accused's propensity to testify truthfully.

*State v. Burton,* 101 Wn.2d at 6–7 (quoting from S. Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 7051, 7061). The court noted that the House–Senate Conference Committee gave the phrase essentially the same definition.

This court has repeatedly defined a narrow scope for the introduction of prior conviction evidence for impeachment purposes. The analysis adopted in *Burton* resolves the question presented in the instant case in favor of a more restrictive approach. This reasoning is reflected in *Burton's* language, which repeatedly refers to "crimes which contain elements in the nature of *crimen falsi*", *Burton,* at 7. For example, in *Burton* we restricted prior conviction evidence admissible under ER 609(a)(2) to offenses which have a

> direct bearing on a defendant's ability to testify truthfully . . . Therefore, the category of crimes involving "dishonesty" is defined to include only those crimes having *elements* in the nature of *crimen falsi,* the commission of which involves some *element* of deceit, fraud, untruthfulness or falsification bearing on the accused's propensity to testify truthfully.

(Italics ours.) *Burton,* at 10.

Justice Dimmick's concurring and dissenting opinion in *Burton* criticized the majority precisely because it failed to *require or to allow* the trial court to inquire into the circumstances of the commission of the previous conviction in question. *Burton,* at 11. The narrower question presented in this case, whether to permit such an inquiry, was not presented by the facts in *Burton.*

---

[3]"The term involves the element of falsehood, and includes everything which has a tendency to injuriously affect the administration of justice by the introduction of falsehood and fraud. A crime less than felony that by its nature tends to cast doubt on the veracity of one who commits it." (Citations omitted.) Black's Law Dictionary 446 (4th ed. 1968).

## III

Unlike ER 609(a)(1), once a crime has been determined to contain elements of dishonesty or false statement, the trial court is left without discretion to balance its prejudicial effect; the prior conviction *must* be admitted. *State v. Jones, supra; State v. Alexis, supra.* In creating the federal rule, Congress determined that crimen falsi convictions are peculiarly probative of credibility and, "under this rule, are always to be admitted." H.R. Conf. Rep. No. 1577, 93d Cong., 2d Sess. 4, *reprinted in* 1974 U.S. Code Cong. & Ad. News 7089, 7103. The legislative history reveals that, after early congressional criticism, the rule's drafters deleted a third paragraph in ER 609 which would have expressly incorporated the rule 403 balancing test. *See United States v. Kiendra,* 663 F.2d 349, 354–55 (1st Cir. 1981) (citing H.R. Doc. No. 93–46, at 21 (1973)).

██ In its opinion affirming the holding of the trial court, the Court of Appeals noted that the language of 609(a)(2) is crucial to its interpretation. We agree with this statement wholeheartedly. We must consider the language of the rule as a whole, however, and not grasp at an anomalous phrase in isolation from the rest of ER 609 while disregarding the import of the Rules of Evidence as an entirety. *Cf. Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 391, 645 P.2d 697 (1982) (in interpreting a statute the court must construe the act as a whole, and effect should be given to all the language used. All the provisions in the act must be considered in relation to each other, and, if possible, harmonized to insure proper construction of each provision). *Heaney v. Seattle Mun. Court,* 35 Wn. App. 150, 154, 665 P.2d 918 (1983) (the court interprets local court rules by reference to rules of statutory construction), *see* 3 C. Sands, *Statutory Construction* § 67.10 (4th ed. 1974). License for an open–ended examination of the entire record of past proceedings would so broaden the rule as to render the distinction made between ER 609(a)(1) and ER 609(a)(2) superfluous, as some aspect of dishonesty or at least stealth adheres in virtually every crime. Prior sexual

offenses and other heinous crimes can be particularly damning, although their logical relation to the crime charged may be tenuous or nonexistent. Normally, such crimes will not be admitted, because their admission is restrained by the operation of ER 403, ER 404, and ER 609(a)(1). Under an overly broad construction of the rule, however, the prosecutor could comb the underlying facts of the prior conviction to discover some artifice or ruse whereby an assault had been facilitated, and the mandatory language of ER 609(a)(2) would require admission into evidence, regardless of the overwhelmingly prejudicial effect of such evidence.

## IV

The federal courts disagree as to whether specific facts should be considered in determining the admissibility of prior convictions under ER 609(a)(2). One panel of the District of Columbia Circuit held that the trial court may not look beyond the elements of the crime of which the defendant was previously convicted. *United States v. Lewis,* 626 F.2d 940 (D.C. Cir. 1980). A later federal district court case expressly compared the broader approach with that advanced in *Lewis,* and favored the narrow approach. *Tussel v. Witco Chem. Corp.,* 555 F. Supp. 979 (W.D. Pa. 1983). The court refused to examine the underlying facts of a prior conviction for conspiring to import a controlled substance, reasoning:

> The expansive theory embraced by proponents of a flexible application of the definition of crimen falsi offenses would, if carried to its logical extreme, result in the admissibility for impeachment purposes of all prior convictions for intentional violations of law. It is clear from the [House–Senate] Conference Committee Report that Congress recognized a distinction between "offenses in the nature of crimen falsi" and other criminal offenses. Congress found the former to be "peculiarly probative of credibility" and, therefore, convictions of such offenses are "always to be admitted." . . . This [Lewis] test provides the most practical, efficient and consistent manner in which a trial judge can utilize the rule.

(Footnote and citation omitted.) *Tussel*, at 982.

## V

Legal commentators disfavor the practice of examining the underlying facts of a prior conviction to determine its admissibility. Impeachment by means of ER 609 is available to both the defense and the prosecution. In many criminal cases, witnesses for both sides have criminal records, and both the prosecution and the defense will have a strong interest in impeaching the opposition's witnesses. Criminal prosecutions should not be delayed and complicated by the presentation of "sub-trials" on previous, unrelated crimes. The rule should not be construed so as to permit jury confusion by the presentation of collateral criminal proceedings.

Louisell and Mueller identify another problem with the broader approach: it is inconsistent with the firmly established principle, recognized by this court, that only the basics such as time, place, and nature of the prior offense and punishment should be received in evidence, and details of the offense excluded. 3 D. Louisell & C. Mueller, *Federal Evidence* § 317, at 342 (1979). This principle was affirmed recently in *State v. Coe*, 101 Wn.2d 772, 776, 684 P.2d 668 (1984), where we held:

> Cross examination on prior convictions under ER 609(a) is limited to facts contained in the record of the prior conviction: the fact of conviction, the type of crime, and the punishment imposed. Cross examination exceeding these bounds is irrelevant and likely to be unduly prejudicial, hence inadmissible.

(Citations omitted.) If, as in this case, the jury is only presented with the conviction and not the facts supporting it, it is practically required to make one of the improper inferences incident to such information.

## VI

Restricting the trial court's ER 609(a)(2) inquiry to the elements of prior convictions provides a workable, consistent rule. Furthermore, it is a rule consistent with the

important prudential and policy considerations expressed throughout prior Washington law. We reverse the Court of Appeals, and remand the case for a new trial.

PEARSON, C.J., DOLLIVER and DORE, JJ., and CUNNINGHAM, J. Pro Tem., concur.

ANDERSEN, J. (dissenting)—It does not comport with my concept of responsible rulemaking for this court to adopt a written court rule that plainly says one thing, and then, through the guise of "interpretation", to now change it to mean something altogether different. Therefore, I dissent.

While I fully agree that the deputy prosecuting attorney's closing argument quoted at the outset of the majority opinion was improper, I am not entirely clear as to the purpose that quotation in the opinion is supposed to serve since no error was assigned to it. Nor was that argument even mentioned by the parties in their briefs or arguments herein, either in this court or the Court of Appeals. Certainly there is nothing in the evidentiary rule under discussion in this case which purports to justify such an argument. Accordingly, I will proceed to the evidentiary issue which *was* raised.

The critical factual issue at trial was whether the defendant had the deceased priest's authority to use his credit card and sign his name for the substantial charges he made using that credit card. The defendant testified that he did have permission, hence his credibility was central to the case.

Our evidence rule dealing with impeachment by evidence of conviction of crime provides simply and clearly:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime *shall* be admitted if elicited from him or established by public record during cross examination but only if the crime . . . (2) involved dishonesty or false statement, regardless of the punishment.

(Italics mine.) ER 609(a)(2).

Following the language of this rule, the trial court con-

sidered the record as to the nature of the defendant's prior conviction in order to determine whether or not it involved "dishonesty or false statement". He found that it did, and therefore allowed its use for impeachment purposes.

The Court of Appeals determined that this was entirely proper and affirmed.[4] I agree.

I perceive the *issue* here to be as follows: Did the trial court err by admitting into evidence at trial, for impeachment purposes under ER 609(a)(2), the defendant's prior conviction of third degree theft after first inquiring into the circumstances of the crime in order to determine whether or not the conviction involved "dishonesty or false statement" in fact?

I would *conclude*: In determining whether a prior conviction is of a crime involving "dishonesty or false statement", so as to make it admissible for impeachment purposes under ER 609(a)(2), the trial court is not limited to considering the statutory elements of the crime, but may evaluate the defendant's actual conduct and the circumstances of the crime.[5]

As noted, ER 609(a)(2) provides that a conviction of a crime is admissible to attack the credibility of a witness if the crime "involved dishonesty or false statement, regardless of the punishment". This rule allows the use of convictions for both felonies and misdemeanors, so long as the "dishonesty or false statement" test is met.[6]

In *State v. Thompson,* 95 Wn.2d 888, 632 P.2d 50 (1981), this court decided that the scope of crimes involving "dis-

---

[4]*State v. Newton,* 42 Wn. App. 718, 714 P.2d 684 (1986).

[5]This is not to say, of course, that once the court has determined that a conviction is admissible for impeachment purposes everything about the crime becomes admissible. Clearly, the proof is limited, for example, to such things as the fact of conviction, type of crime and punishment. *See State v. Coe,* 101 Wn.2d 772, 776, 684 P.2d 668 (1984). Although discussed at some length by the majority, that is not the issue with which this case is concerned.

[6]*State v. Thompson,* 95 Wn.2d 888, 896, 632 P.2d 50 (1981); 5 K. Tegland, Wash. Prac., *Evidence* § 236, at 503 (2d ed. 1982).

honesty or false statement" is narrower than it may first appear.[7] In *Thompson,* it unanimously held that "ER 609 distinguishes between acts of deceit, fraud, and cheating, which impinge on one's reputation for honesty, and other felonious acts of violence which may, *in fact,* 'result from a short temper, a combative nature, extreme provocation, or other causes, [and] have little or no direct bearing on honesty and veracity.'" (Italics ours.)[8]

Then in *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984), this court had before it a case which presented "the first opportunity for us to determine which crimes are crimes of 'dishonesty'".[9] In this connection, the *Burton* majority observed:

> In choosing to adopt the federal version of rule 609 verbatim, we indicated our acceptance of the interpretation given to that rule by federal courts.[10]

After reviewing federal cases and scholarly commentary thereon, the court held:

> Only prior conviction evidence which has a direct bearing on a defendant's ability to testify truthfully will be admissible to impeach a defendant's credibility as a witness. Therefore, the category of crimes involving "dishonesty" is defined to include only those crimes having elements in the nature of *crimen falsi,* the commission of which involves some element of deceit, fraud, untruthfulness or falsification bearing on the accused's propensity to testify truthfully.[11]

The *Burton* majority concluded that the trial court had committed reversible error when it admitted, for impeachment purposes, the defendant's prior convictions for petit larceny and shoplifting.

---

[7]5 K. Tegland, at 502.

[8]*Thompson,* at 891.

[9]*State v. Burton,* 101 Wn.2d 1, 5, 676 P.2d 975 (1984).

[10]*Burton,* at 9.

[11]*Burton,* at 10.

As Justice Carolyn R. Dimmick[12] pointed out in her separate opinion in *Burton* (concurring in part, dissenting in part—and in which opinion the late Justice Hugh J. Rosellini also concurred), the *Burton* majority "*suggests* that prior convictions can be categorized as crimes of 'dishonesty or false statement' merely by looking at the name of the crime." (Italics mine.)[13] The *Burton* majority opinion did not, however, deal with the merits of that proposition or directly rule thereon.

Since this court in *Burton* saw fit to accept the interpretation of ER 609 adopted by the majority of federal courts and follow their "restrictive approach to admissibility of evidence under ER 609(a)(2)",[14] I perceive no valid reason for not also adopting the *corollary* of that view which is followed by the vast majority of federal courts and which the Court of Appeals followed in this case. As the District of Columbia Circuit Court observed in an en banc decision, "*[a]ll circuits that have considered the question, including our own, have held that the prosecution may adduce specific facts to bring a prior conviction within Rule 609-(a)(2).*" (Italics mine.)[15] Accordingly, I would not restrict trial courts to considering merely the statutory elements of prior offenses offered for impeachment purposes under ER 609(a)(2), but would allow them to evaluate the actual circumstances of the crime in deciding whether or not the crime of which the witness was convicted involved "dishonesty or false statement".

The majority says that the federal courts disagree on how to interpret ER 609(a)(2), and cites two cases as support for its interpretation. These are *United States v. Lewis,* 626

---

[12]Justice Dimmick, formerly of this court, is presently serving on the United States District Court for the Western District of Washington.

[13]*Burton,* at 11 (Dimmick, J., concurring in part, dissenting in part).

[14]*Burton,* at 10.

[15]*United States v. Lipscomb,* 702 F.2d 1049, 1064 (D.C. Cir. 1983).

F.2d 640 (D.C. Cir. 1980) and *Tussel v. Witco Chem. Corp.*, 555 F. Supp. 979 (W.D. Pa. 1983). I strenuously question that. The District of Columbia Circuit Court dismissed *Lewis* in 1983 after describing the other circuits' agreement with my interpretation of ER 609(a)(2) as set forth above.[16] In *United States v. Lipscomb,* 702 F.2d 1049 (D.C. Cir. 1983), the court noted that the *Lewis* interpretation of the rule was no more than dictum.[17] The *Tussel* reliance on *Lewis* as "the most recent decision on this issue" is no longer valid and *Tussel* is thus no more than a federal trial court decision which relied on a case which no longer has any precedential value.[18] Accordingly, *Tussel* has no real precedential value either.

I fully agree with the analysis in the comprehensive Court of Appeals majority opinion in this case written by Judge Reed:[19]

> The commission of credit card theft and the use of that stolen card involve dishonesty. *See United States v. Crawford,* 613 F.2d 1045, 1052 (D.C. Cir. 1979). The underlying circumstances of Newton's prior conviction for third degree theft reveal that Newton stole a credit card and assumed a false identity as the card's owner in order to obtain either goods or services through the owner's credit. With the facts of the conviction before him and with no definite authority precluding his use of these underlying facts, the trial judge acted properly in admitting Newton's prior conviction following his determination that the crime involved dishonesty.
>
> Although *State v. Burton* [101 Wn.2d 1, 676 P.2d 975 (1984)] may *suggest* that the trial court can consider only the statutory elements of the crime underlying the impeaching conviction, it does not clearly so hold. Indeed, justification for the trial court's actions in admitting Newton's prior conviction can be found in *Burton.*

---

[16]*Lipscomb,* at 1064.

[17]*Lipscomb,* at 1064 n.56.

[18]*See Tussel v. Witco Chem. Corp.,* 555 F. Supp. 979, 982 (W.D. Pa. 1983).

[19]*Newton,* at 722–24.

The *Burton* majority emphasized that, in adopting verbatim the federal version of ER 609, our Supreme Court "indicated our acceptance of the interpretation given to that rule by federal courts." *Burton,* 101 Wn.2d at 9; *see* Comment, ER 609, 91 Wn.2d 1150 (1978). An overwhelming majority of the federal circuits have permitted the type of inquiry that was conducted by the trial court here. *Burton,* 101 Wn.2d at 8. *See United States v. Lipscomb,* 702 F.2d 1049, 1064 (D.C. Cir. 1983); *United States v. Grandmont,* 680 F.2d 867, 871 (1st Cir. 1982); *United States v. Hayes,* 553 F.2d 824, 827–28 (2d Cir.), *cert. denied,* 434 U.S. 867, 54 L. Ed. 2d 143, 98 S. Ct. 204 (1977); *Government of V.I. v. Toto,* 529 F.2d 278, 281 (3d Cir. 1976); *United States v. Cunningham,* 638 F.2d 696, 699 (4th Cir. 1981); *United States v. Barnes,* 622 F.2d 107, 110 (5th Cir. 1980); *United States v. Papia,* 560 F.2d 827, 847 (7th Cir. 1977); *United States v. Yeo,* 739 F.2d 385, 388 (8th Cir. 1984); *United States v. Glenn,* 667 F.2d 1269, 1273 (9th Cir. 1982); *United States v. Whitman,* 665 F.2d 313, 320 (10th Cir. 1981).

As stated in *United States v. Hayes,* 553 F.2d at 827:

If the title of an offense leaves room for doubt, a prosecutor desiring to take advantage of automatic admission of a conviction under [609(a)(2)] must demonstrate to the court "that a particular prior conviction rested on facts warranting the dishonesty or false statement description." *United States v. Smith,* [551 F.2d 348, 364 n.28 (1976)].

Also, as stated in *United States v. Papia,* 560 F.2d at 847:

Even the courts that reject the view that stealing, without more, involves "dishonesty" that bears on a witness's veracity recognize that modern theft statutes may encompass criminal conduct that does fall within the ambit of Rule 609(a)(2), for a theft conviction may well be based on fraudulent or deceitful conduct that would previously have been prosecuted as larceny by trick, embezzlement, or the taking of money or property by false pretenses, etc. Accordingly, these courts have adopted the rule that, when the statutory offense of which the witness was convicted does not require proof of fraud or deceit as an essential element of the crime, the prior conviction may yet be admitted under Rule 609(a)(2) if the proponent of the evidence bears

the burden of showing that the conviction "rested on facts warranting the dishonesty or false statement description." *United States v. Hayes,* 553 F.2d 824, 827 (2d Cir. 1977), quoting *United States v. Smith,* 551 F.2d 348, 364 n.28 (D.C. Cir. 1976); accord *Government of Virgin Islands v. Toto,* 529 F.2d 278, 281 n.3 (3d Cir. 1976).

Further justification for interpreting ER 609(a)(2) to allow this type of inquiry is found in the very language of the rule. The rule could have provided, but does not, that only those crimes having certain *statutory elements* are admissible. Rather, the rule permits admission of a prior conviction for a crime that "*involved* dishonesty or false statement . . ." (Italics ours.)

Consideration of the actual conduct involved in the commission of the crime underlying the conviction clearly is consistent with *Burton*'s statement that "[t]he purpose of allowing impeachment by prior conviction evidence is to shed light on the defendant's *credibility* as a witness. Therefore, prior convictions admitted for impeachment purposes must have some relevance to the defendant's ability to tell the truth." *Burton,* 101 Wn.2d at 7. If the underlying circumstances of the crime demonstrate a disregard for truthfulness, then admission of evidence of that conviction fulfills the purpose of ER 609(a)(2).

We conclude, therefore, that the trial court did not err in admitting evidence of Newton's prior conviction for third degree theft under ER 609(a)(2), after inquiring into the circumstances of that conviction.

(Footnote omitted.) This analysis and ruling are correct and I would follow them.

I am well aware that some text writers subscribe to a contrary view. For example, Judge Weinstein and Professor Berger, in their well regarded text *Weinstein's Evidence,* indicate that the statutory definition of the crime should be determinative for ER 609(a)(2) purposes. They reason that "convenience" requires this.[20] With due respect for their expertise, I do not perceive how making preliminary factual determinations of this kind substantially differs from making the myriad of other preliminary factual determinations

---

[20] 3 J. Weinstein & M. Berger, *Evidence* ¶ 609[04], at 609–75 (1985).

which are a trial judge's lot in modern criminal trial practice in this state.[21] Such factual determinations on preliminary matters are now relatively routine.

Nor do I feel there is any profit to be gained from a case by case analysis concerning the extent of the factual inquiry allowed in each of the reported decisions on this subject. That is because in this situation, as in so very many other trial matters, we should rely on the discretion of the trial court to decide when it should inquire into such background facts and circumstances and how extensive an inquiry to allow.[22]

I do not question either the sincerity or the intensity of the majority's feeling on this issue. With all due respect, however, the majority's arguments against using a witness' prior record of convictions of crimes to impeach the witness at trial are no more than arguments in favor of changing our court rule. A well established, workable and frequently used process exists for that precise purpose, wherein the Bar and everyone else concerned may be heard in connection therewith. The present Evidence Rules went through such a process before they were adopted, and changes to those rules should go through the same process.

Implicit in the majority's decision and reasoning is the notion that since this court adopted the evidence rule in question, and since we have the undoubted right to interpret it and other rules of court, we thus have the right to construe such rules to mean whatever a majority of this court "considers best". When this argument was previously made, it was rejected out of hand by this court. As *State v. McIntyre*, 92 Wn.2d 620, 622–23, 600 P.2d 1009 (1979) made eminently clear in this regard:

> This case involves only the application and interpretation of a rule adopted by this court. In oral argument counsel implied that this court, as the author of the rule,

---

[21]*See* CrR 3.5 (confession hearing procedure); CrR 3.6 (suppression hearing procedure); CrR 4.5 (omnibus hearing procedure).

[22]*Lipscomb*, at 1064.

need not adhere to the principles of statutory construction. We disagree. To ignore those principles would contravene the rule recently announced in *State ex rel. Schillberg v. Everett Dist. Justice Ct.,* 90 Wn.2d 794, 585 P.2d 1177 (1978), where we said at page 797:

> As the author of these rules, this court, of course, is in a position to reveal the actual meaning which was sought to be conveyed. However, we approach them as though they had been drafted by the legislature, and give the words their ordinary meaning, reading the language as a whole and seeking to give effect to all of it.

> One of the rules of statutory construction is that language which is clear upon its face does not require or permit any construction. We have said several times: "Where there is no ambiguity in a statute, there is nothing for this court to interpret." *State v. Roth,* 78 Wn.2d 711, 714, 479 P.2d 55 (1971); *State ex rel. Hagan v. Chinook Hotel, Inc.,* 65 Wn.2d 573, 578, 399 P.2d 8 (1965); *In re Estate of Baker,* 49 Wn.2d 609, 610, 304 P.2d 1051 (1956).

There is no ambiguity in ER 609(a)(2) to interpret. This court has no more business reading words into this court rule that are not there, or modifying it by construction, than we have of interpreting an unambiguous statute.[23]

I dissent from the majority opinion for the foregoing reasons. I would affirm the Court of Appeals and the defendant's conviction.

BRACHTENBACH, CALLOW, and DURHAM, JJ., concur with ANDERSEN, J.

---

[23]*See King Cy. v. Seattle,* 70 Wn.2d 988, 991, 425 P.2d 887 (1967).