[No. 13154-4-II.   Division Two.   August 17, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT D. SCHROEDER, *Appellant*.

*William C. Henry* and *Henry & Allen,* for appellant (appointed counsel for appeal).

*John F. Raymond, Prosecuting Attorney,* and *Mark L. Huth, Deputy,* for respondent.

MORGAN, J. — Robert D. Schroeder appeals his conviction for second degree possession of stolen property. We affirm.

On September 22, 1988, Jefferson County Sheriff's deputies conducted a valid search of the defendant's home and truck. They seized a large quantity of personal property, much of which had been stolen in 17 burglaries that had occurred near the defendant's home during the preceding month.

The seized property included three outboard motors. Two were immediately identified as stolen property,[1] but the third was not. The reason the third was not was that the police mistakenly recorded its serial number, and as a result, they did not receive a "hit" when they ran it through their computer. The third was stored in the sheriff's property room until released to the defendant in the manner described below.

The defendant confessed to 11 burglaries and admitted that various items found during the search were stolen property. He was charged with eight counts of second degree burglary and held in jail pending trial.

On November 9, 1988, defendant pleaded guilty to five counts of second degree burglary. He was released from jail pending sentencing.

On November 15, 1988, defendant went to the Jefferson County Sheriff's office and asked for the return of "his" outboard motor — the third motor, for which the police had recorded the wrong serial number. A sheriff's deputy once again ran the wrong serial number through the computer and did not receive a "hit". The deputy then released the motor to defendant.

The same day, defendant tried to sell the motor to a marine supplier. Naturally enough, the supplier became sus-

---

[1] These two motors were not used as a basis for charges and were ultimately returned to their owners.

picious when he saw the sheriff's evidence tag still affixed to the motor. He called the sheriff's office and gave its correct serial number. Using that number, a deputy ran another computer check and discovered for the first time that the motor had been reported stolen in August 1988. The following day, deputies recovered the motor from another marine store where defendant had succeeded in selling it.

The State charged defendant with second degree possession of stolen property occurring on or about November 15, 1988. Trial commenced July 24, 1989.[2]

Indicating that he planned to testify, the defendant made a motion in limine to exclude his five burglary convictions.[3] The trial court ruled that the convictions would be admissible to impeach under ER 609(a)(2). It required, however, that the State refer to them as convictions for "felonies" rather than "burglaries". It ruled the convictions would not be admissible under ER 609(a)(1) or ER 404.

The defendant also made a motion in limine to exclude evidence that on September 22, 1988, he had been in possession of stolen property other than the third motor that was the subject of the present charge. The trial court ruled that evidence of defendant's possession of property stolen in the five burglaries to which he had pleaded guilty would be admissible to show knowledge that the third motor was stolen property, pursuant to ER 404(b). It ruled that evidence of other stolen property would be inadmissible.

The jury convicted, and defendant was sentenced to 12 months in jail. He now appeals, arguing that the trial court erred in making the rulings just described, as well as certain other rulings.

---

[2]Defendant absconded after being granted personal recognizance pending trial. He was apprehended in Missouri and brought back before the court in approximately June 1989.

[3]The defendant had an additional conviction for unlawful issuance of a bank check, but on appeal he does not argue that it was inadmissible. *See State v. Smith*, 56 Wn. App. 909, 911, 786 P.2d 320 (1990).

## ER 609(a)(2)

ER 609(a)(2) provides:

> For the purpose of attacking the credibility of a witness in a criminal or civil case, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness but only if the crime . . . (2) involved dishonesty or false statement, regardless of the punishment.

To apply ER 609(a)(2) to this case, we address three propositions. (1) Theft is a crime of dishonesty. (2) If theft is a crime of dishonesty, some but not all second degree burglaries are also. (3) A trial court is not precluded from ascertaining whether a prior conviction for second degree burglary involved dishonesty, and the trial court in this case did not err when it ruled that the defendant's convictions did.

### A

What constitutes a crime of dishonesty has a tortured history in Washington. *State v. Burton*, 101 Wn.2d 1, 676 P.2d 975 (1984) was decided February 2, 1984. The court said that a conviction was for a crime involving "dishonesty or false statement" if the crime was "perjury, false statement, criminal fraud, embezzlement or false pretense, or any other offense, in *the nature of crimen falsi* the commission of which involves some element of untruthfulness, deceit or falsification bearing on the accused's propensity to testify truthfully." 101 Wn.2d at 6-7 (quoting S. Rep. No. 1277, 93d Cong., 2d Sess. (1974)). The court held that theft was not such a crime. 101 Wn.2d at 7.

*State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988) (*Brown* I), was decided July 14, 1988. Repudiating *Burton*'s crimen falsi test, a plurality of four justices said:

> [W]e return to basics. . . . The term "dishonest" implies the act or practice of telling a lie, or of cheating, deceiving, and stealing. Crimes of theft involve stealing, and are clearly encompassed within the term dishonest. . . .
> . . . The act of taking property is positively dishonest. . . .

(Citations omitted.) 111 Wn.2d at 154-55. The plurality went on to say that "taking another's property by theft, including

shoplifting, or by robbery involves dishonesty", and "these crimes are per se admissible for impeachment purposes under ER 609(a)(2)." 111 Wn.2d at 155. A fifth justice concurred in the plurality's result; thus, it appeared that *Brown* I's result, if not its reasoning, represented the law of Washington.

*State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989) (*Brown* II) was decided October 31, 1989. It resulted from the Supreme Court granting a motion to reconsider *Brown* I. By means of two concurring opinions, five justices adhered to or reverted to *Burton*.

*State v. Ray*, 116 Wn.2d 531, 806 P.2d 1220 (1991) was decided March 21, 1991. Adopting the reasoning and result of *Brown* I, 116 Wn.2d at 545, the court held that "crimes of theft involve dishonesty and are *per se* admissible for impeachment purposes under ER 609(a)(2)." 116 Wn.2d at 545. *See also State v. McKinsey*, 116 Wn.2d 911, 810 P.2d 907 (1991) (extending *Ray* and holding that first degree possession of stolen property is a crime of dishonesty or false statement); *State v. Watkins*, 61 Wn. App. 552, 555, 811 P.2d 953 (1991) (describing *Ray*).

Trial in the present case occurred while *Brown* I appeared to represent the law of Washington. *Brown* I and *Ray* are essentially the same, and *Ray* remains in effect today. Defendant does not argue that the intervening decision in *Brown* II has any legal significance with respect to this case, and we do not perceive that it does. For convenience, then, we treat *Ray* as if it had been in effect at all times material to this case.

B

██ If theft is a crime of dishonesty, second degree burglary performed with intent to commit theft is also. Theft contains the element of intent to deprive another of his or her property, RCW 9A.56.020(1), and that intent involves dishonesty. *See State v. Ray*, 116 Wn.2d at 545 ("Crimes of theft involve stealing, and are clearly encompassed within the term dishonest.") (quoting *Brown* II, 113 Wn.2d at 551-52); *State v. Smith*, 56 Wn. App. 909, 911, 786 P.2d 320 (1990) (the crime of unlawful issuance of a bank check con-

tains element of intent to defraud, and that intent involves dishonesty). By hypothesis, second degree burglary performed with intent to commit theft contains the same intent. RCW 9A.52.030(1) (burglary requires intent to commit a "crime"); RCW 9A.56.020(1) (crime of theft requires intent to deprive). Therefore, burglary performed with intent to commit theft is a crime of dishonesty.

Although burglary performed with intent to commit theft is a crime of dishonesty, the same is not true of every burglary. For example, it may be assumed that a burglary performed with intent to commit assault or malicious mischief does not involve a dishonest intent and should not be categorized as a crime of dishonesty. *Watkins*, 61 Wn. App. at 556. As Division One has put it, "not all second degree burglary convictions are per se admissible under ER 609(a)(2)." *Watkins*, 61 Wn. App. at 557.

## C

■ In general, a trial judge must determine whether a prior conviction falls under ER 609(a)(2) by examining the statutory elements of the crime for which the conviction was rendered. In *State v. Newton*, 109 Wn.2d 69, 71, 743 P.2d 254 (1987), the Supreme Court said:

> The trial court's inquiry into the facts of a prior conviction for purposes of determining whether it may be admitted for impeachment purposes under ER 609(a)(2) shall be limited to the elements and date of the prior conviction, the type of crime, and the punishment imposed.

The conviction in issue was for theft, and the trial court had looked to the facts in deciding that the theft involved dishonesty. Thus, the Supreme Court reversed.

Before *Ray*, *Newton*'s approach worked adequately for burglary.[4] The elements of burglary appear on the face of RCW 9A.52.030(1).[5] They include (1) entering or remaining

---

[4]In this sentence and hereafter, all references to "burglary" are to second degree burglary.

[5]Before July 1, 1990, RCW 9A.52.030(1) provided:
"A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in

unlawfully in a building other than a vehicle (2) with intent to commit a crime against a person or property therein. They do not make burglary crimen falsi. Thus, by looking at the statutory elements of burglary, a trial court could discern that burglary did not involve dishonesty.

Since *Ray*, *Newton*'s approach has not worked adequately for burglary. Under *Ray*, as discussed in the preceding section, whether a particular second degree burglary conviction involves dishonesty depends on what crime the convicted person intended to commit after entering or remaining unlawfully in the building. Yet the elements of burglary shown on the face of RCW 9A.52.030(1) use the word "crime" without specifying whether the crime referred to is theft, assault, murder, rape, malicious mischief, or any one of a host of other offenses. Thus, the statutory elements of burglary are ambiguous with respect to dishonesty, and a trial judge restricted to looking only at those elements has no way of determining whether a second degree burglary conviction involved dishonesty. *Cf. Watkins*, 61 Wn. App. at 556 (second degree burglary conviction "inherently ambiguous" on its face).

To fill this void, we hold that before a trial judge inquires into the elements of RCW 9A.52.030(1) pursuant to *Newton*, he or she may resolve the ambiguity inherent in that statute by (1) identifying the crime that the convicted person intended to commit after entering or remaining unlawfully in the building; (2) breaking that crime into its component elements; and (3) substituting those elements into RCW 9A.52.030(1) in place of the word "crime". This clarifies the word "crime" while still looking to statutory elements, subject to one problem discussed below. It also comports with *Newton*'s implied holding that whether a particular burglary conviction involved a crime of dishonesty is not an ordinary question of preliminary fact to be decided under ER 104(a). *See Newton*, 109 Wn.2d at 88-89 (Andersen,

---

a building other than a vehicle." RCW 9A.52.030(1) was amended effective July 1, 1990, but the amendment is not pertinent here.

J., dissenting) (citing and discussing 3 J. Weinstein & M. Berger, *Evidence* ¶ 609[04] (1985)).

The possible problem involves identifying the crime that the convicted person intended to commit after entering or remaining unlawfully in the building. A trial judge cannot identify such crime by examining the face of a second degree burglary conviction. As Division One said in *Watkins*, 61 Wn. App. at 556:

> Thus, while a judgment entered on a second degree burglary conviction may well stem from an unlawful entry coupled with a completed theft or the intent to commit theft, it may also stem from an unlawful entry coupled with an intent to commit malicious mischief, arson, a sexual offense or other crime which does not involve theft. On its face a second degree burglary conviction is, therefore, inherently ambiguous as to the defendant's criminal intent.

Nor can a trial judge identify such crime by examining the charge that led to the conviction, for the charge need not allege such crime. *State v. Bergeron*, 105 Wn.2d 1, 16, 711 P.2d 1000 (1985). The only remaining way to identify such crime is by examining the facts underlying the conviction, and it can be argued that *Newton* prohibits that kind of examination.

Notwithstanding this argument, we conclude that *Newton* does not bar a trial judge from looking to the facts underlying a burglary conviction for the limited purpose of identifying the crime that a person convicted of burglary intended to commit. We reach this conclusion for two reasons.

First, *Newton* never prohibited looking to the facts underlying a conviction for the limited purpose of clarifying statutory elements that were otherwise ambiguous with respect to dishonesty. When *Newton* was decided, the elements of theft were facially unambiguous with regard to dishonesty, for they showed that theft was not crimen falsi. Thus, *Newton's* precise holding was that when the elements of a crime show unambiguously that it is not a crime of dishonesty, the facts underlying a conviction cannot be used to convert the

crime into one of dishonesty for purposes of the individual case before the court. In contrast to theft as it existed when *Newton* was decided, the elements of second degree burglary set forth in RCW 9A.52.030(1) may or may not show a crime of dishonesty, depending upon what meaning is ascribed to the word "crime" as it appears on the face of that statute. Thus, the elements of second degree burglary are facially ambiguous with regard to dishonesty, and *Newton* did not discuss how a trial court should proceed in that situation.

Second, even if *Newton* initially prohibited looking to the facts for the limited purpose of identifying the crime that a person convicted of burglary intended to commit, *Newton* has now been modified by *Ray*. *Ray* professed a "return to basics", 116 Wn.2d at 545, and we assume that "basics" include consistency. If theft is a crime of dishonesty, as *Ray* holds, it would be inconsistent to say that burglary performed with intent to commit theft is not; and if burglary performed with intent to commit theft is a crime of dishonesty, it would be inconsistent to say that a trial court must nevertheless treat every burglary as not involving dishonesty. Thus, assuming that *Newton* originally prohibited looking to the facts underlying a burglary conviction for the limited purpose of identifying the crime that the convicted person intended to commit, *Ray* has now modified *Newton* to the extent that a trial court may now look to the facts for that limited purpose.

We intend our holding to be a narrow one, and nothing herein is meant to imply that a trial court may look to the facts underlying a prior conviction for purposes other than to clarify the word "crime" as used in RCW 9A.52.030(1). As the *Newton* court pointed out:

> License for an open-ended examination of the entire record of past proceedings would so broaden the rule as to render the distinction made between ER 609(a)(1) and ER 609(a)(2) superfluous, as some aspect of dishonesty or at least stealth adheres in virtually every crime. . . .

*Newton*, 109 Wn.2d at 79.

In the present case, the record is replete with information that Schroeder's five prior burglaries were performed with intent to commit theft.[6] Indeed, the police and Schroeder testified that items of property stolen in those burglaries were found during the search of his home and truck on September 22, 1988. In this case, then, the statutory elements to be considered by the trial court were those of burglary, supplemented by inserting the elements of theft in place of the word "crime". The elements of theft included intent to deprive, RCW 9A.56.020(1). Thus, the elements of burglary, as supplemented, disclosed a crime involving dishonesty, and the trial court did not err when it ruled that the defendant's five prior burglaries could be used for impeachment under ER 609(a)(2).

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PETRICH, C.J., and WORSWICK, J. Pro Tem., concur.

---

[6]In addition, nothing in this record even hints that the burglaries may have been performed with intent to commit a combination of crimes, *e.g.,* theft and malicious mischief.