30 P.3d 522 (2001)
CITY OF SEATTLE, Respondent,
v.
Paul H. PATU, Appellant.
No. 45284-3-I.
Court of Appeals of Washington, Division 1.
September 10, 2001.
*523 Neil Fox, Christine Jackson, King County Public Defender Ass'n, Seattle, for Appellant.
Richard Greene, Asst. City Attorney-Criminal Div., Seattle, for Respondent.
KENNEDY, J.
We cannot provide any relief to Paul Patu because he invited the constitutional error that occurred at his trial in Seattle Municipal Court. We granted discretionary review nevertheless, in order to clarify our decision in City of Seattle v. Abercrombie.[1] We became aware of the need for clarification when Patu sought modification of our court commissioner's order denying discretionary review. Patu read a portion of our decision in Abercrombie one way, our commissioner read it another way, and neither of them read it as we had intended to write it. And so, once more, we address the elements of the crime of obstructing a public officer contained in Seattle's poorly drafted obstruction ordinance, SMC 12A.16.010(A)5. Those elements are: (1) that the defendant obstructs a public officer at the scene of an investigation of a crime while the investigation is in process; (2) that the defendant knows that the person obstructed is a public officer discharging his or her official powers and duties; (3) that the defendant intentionally refuses to leave the scene of the investigation while the investigation is in process after being requested to leave by a public officer. A "to convict" instruction that omits the element of actual obstruction relieves the government of its burden of proving that element beyond a reasonable doubt, and is thus constitutionally defective. But where the defendant himself invited the error by proposing the faulty instruction, an appellate court will not grant relief. Accordingly, we affirm Patu's conviction.

*524 FACTS
Paul Patu was in the vicinity of Othello park in the early morning hours with his friend J.T. Loveless. A large group of some 50 or 60 people had gathered at the park to socialize and drink alcohol. The park closed at 10 p.m. Signs announcing the closing hour and the prohibition of liquor in the park were clearly posted. Following a noise complaint, police arrived and ordered the group to disperse and to remove the automobiles that were blocking the roadway. Officer Myers saw Patu in the park carrying an open container of liquor. Officers Cason and Ellis arrived and saw Patu and Loveless walking away from an Oldsmobile. Loveless told Officer Cason that the car was disabled and asked if they could move it to the side of the roadway. As they were doing so, Officer Cason saw an open bottle of fortified wine on the front seat. He inquired about ownership of the car and the liquor. Loveless said the car was his; Patu said the liquor was his.
Upon request, Patu and Loveless provided their names and Officer Cason checked for outstanding warrants. He learned that there were multiple outstanding warrants for Loveless. Officer Cason informed Loveless that he was under arrest. Loveless fled, but was chased down by Officers Myers and Cason. Loveless struggled with these officers as they attempted to handcuff him with additional help from Officer Ellis. In the course of the struggle, Loveless reached for Officer Myers's gun holster. Loveless was very strong and managed to stand up despite the officers' attempts to keep him on the ground while they handcuffed him.
Patu rushed at the officers from behind, yelling and screaming obscenities at them, causing the officers considerable concern for their own safety as they struggled with Loveless. All three officers ordered Patu to "stay back" or "step away". Myers testified that he ordered Patu to stay back and to get to the other side of the street or be arrested. Patu testified that he heard the orders to step back, but he refused to withdraw, and continued to yell and scream obscenities. Officer Ellis held up his hand at Patu, telling him to stay back, and Patu tried to move around him to approach the other two officers who were still struggling with Loveless. Finally, two more officers arrived and restrained Patu while the remaining officers brought Loveless under control.
Patu was charged with two counts of obstructing a public officer under SMC 12A.15.010(A)1 (for physically interfering with an officer) and (A)(5) (for refusing to leave the scene of a crime investigation when told to do so by police). At trial, the City indicated its intention to introduce Patu's prior conviction for false reporting, for purposes of impeachment. Patu requested a limiting instruction, WPIC 5.05, instructing the jury that evidence that Patu had previously been convicted of a crime could be considered in deciding Patu's credibility and for no other purpose. The court denied this instruction. During Patu's redirect examination, Patu explained that this conviction was for using a "fake ID" when he was 19 years old to get into a night club. He also explained that many of his friends at the time had similarly used fake IDs.
At Patu's request, the court included the following "to convict" instruction (in relevant part) for the SMC 12A.16.010(A)5 charge:
To convict the defendant of the crime of obstructing a public officer, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on November 23, 1994, Paul H. Patu refused to leave the scene of an investigation of a crime while the investigation was in progress;
(2) That he intentionally refused to leave after being requested to leave by a public officer;
(3) That he knew an investigation was in progress at the time;
(4) That the public officer was discharging his/her official powers and duties;
(5) That the defendant knew the person making the request was a public officer discharging his/her official powers and duties;
(6) That this occurred in the City of Seattle.
Clerk's Papers at 105. The jury convicted Patu on both obstruction counts. This appeal followed.

*525 DISCUSSION
OVERBREADTH
Patu argues that SMC 12A.16.010(A)(5) is overbroad. We specifically considered and rejected this argument in City of Seattle v. Abercrombie, 85 Wash.App. 393, 945 P.2d 1132 (1997). Notwithstanding our holding in that case, Patu argues that the ordinance is overbroad because it "does not require that any actual interference with the police investigation occur[,]" Opening Brief of Appellant at 32-33, and because it is in tension with a purportedly similar ordinance held to be unconstitutional in City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).
SMC 12A.16.010(A)(5) states that a person is guilty of obstructing a public officer if, "with knowledge that the person obstructed is a public officer, he or she ... [i]ntentionally refuses to leave the scene of an investigation of a crime while an investigation is in progress after being requested to leave by a public officer." (Emphasis ours). In Abercrombie, we stated that
[w]hen SMC 12A.16.010(A)(5) is read in its entirety, it becomes clear that there can be no violation of the ordinance without two other elements [in addition to intentionally refusing to leave the scene of an investigation of a crime]: the person who is asked to leave must know that the officer is a public official and act in a way that obstructs that officer.
85 Wash.App. at 400, 945 P.2d 1132. While SMC 12A.16.010(A)(5) is not the model of legislative clarity, this ordinance expressly requires that the public officer actually be obstructed before there can be a violation. If the public officer did not have to actually be obstructed, the first sentence in Part A of the ordinance would not refer to "the person obstructed." As this court stated in Applied Indus. Materials Corp. v. Melton, 74 Wash. App. 73, 78-79, 872 P.2d 87 (1994), "A legislative body is presumed not to have used superfluous words. Courts are bound to accord meaning, if possible, to every word in a statute." (Citations omitted). Actual obstruction and knowledge of the officer's role as a public official are elements required by the express language of Part A, which applies to all subsections, and which cannot be divorced from subsection 5. We reject Patu's overbreadth challenge of SMC 12A.16.010(A)(5).
Contrary to Patu's assertion, Hill does not require us to conclude that SMC 12A.16.010(A)(5) is unconstitutionally overbroad. Hill considered the constitutionality of City of Houston Ordinance § 34-11(a) (1984), which states that "[i]t shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest." 482 U.S. at 455, 107 S.Ct. 2502. After noting that the "assault" and "strike" language was preempted by the Texas Penal Code, the U.S. Supreme Court concluded that the language "unlawful for any person to... in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty" was overbroad because it "thereby prohibits verbal interruptions of police officers... [and] is not limited to fighting words nor even to obscene or opprobrious language [.]" Id. at 460-63, 107 S.Ct. 2502.
In contrast, SMC 12A.16.010(A)(5) does not suffer from the same defect of sweeping in protected speech that "in any manner" interrupts a police officer. Because SMC 12A.16.010(A)(5) requires actual obstruction of an investigation in progress, the ordinance does not give officers unfettered discretion to limit mere verbal challenges to police action. To "obstruct" is "to block up, stop up or close up ... place an obstacle in or fill with obstacles or impediments to passing ... to be or come in the way of ... hinder from passing, action, or operation [.]" Webster's 3rd New International Dictionary 1559 (1969). Moreover, we noted in Abercrombie that "[b]ecause SMC 12A.16.010(A)(5) is directed at the conduct of the individual interfering with an investigation, not the words being spoken... it is both content neutral and narrowly tailored" to serve a significant government interest. 85 Wash.App. at 399, 945 P.2d 1132. Patu provides no reason for us to reconsider our prior conclusion that SMC 12A.16.010(A)(5) is not overbroad.
*526 VAGUENESS
Facial vagueness
Patu seeks to attack the facial validity of SMC 12A.16.010(A)(5). However, under the doctrine of void for vagueness, "[w]hen a challenged statute does not involve First Amendment rights, we evaluate the statute in light of the particular facts of each case. A party to whose conduct a statute clearly applies may not challenge it on the ground that it is vague as applied to the conduct of others." Abercrombie, 85 Wash.App. at 400, 945 P.2d 1132 (citing State v. Halstien, 122 Wash.2d 109, 117, 857 P.2d 270 (1993); Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 740, 818 P.2d 1062 (1991)). We noted in Abercrombie that this limitation applied to SMC 12A.16.010(A)(5), as a "violation of the ordinance is triggered only by refusing to comply with an order to leave the scene of an investigation, not by exercising free speech rights." 85 Wash.App. at 398, 945 P.2d 1132.
Patu argues that City of Chicago v. Morales, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67, 72 A.L.R.5th 665 (1999) supports his facial challenge of SMC 12A.16.010(A)(5). In Morales, the Supreme Court examined the constitutionality of Chicago Municipal Code § 8-4-015, which states in relevant part: "Whenever a police officer observes a person whom he reasonably believes to be a criminal street gang member loitering in any public place with one or more other persons, he shall order all such persons to disperse and remove themselves from the area." Id. at 65, 119 S.Ct. 1849. Patu relies on Justice Stevens' plurality opinion, joined by Justices Souter and Ginsburg, in which Justice Stevens concluded that this ordinance was subject to a facial vagueness attack because the subject matter of the ordinance involves "loitering," a fundamental liberty right protected by the Due Process Clause, because the ordinance contains no mens rea requirement, and because "vagueness permeates the text" of the law. Id. at 53-56, 119 S.Ct. 1849. However, the majority of the court invalidated the Chicago ordinance solely on the basis that the "broad sweep of the ordinance ... violates `the requirement that a legislature establish minimal guidelines to govern law enforcement.'" Id. at 60, 119 S.Ct. 1849 (citing Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)).
SMC 12A.16.010(A)(5) does not implicate any of the concerns identified by either the plurality or majority opinions in Morales. Patu asks us to construe SMC 12A.16.010(A)(5) as criminalizing a "fundamental right ... to observe and verbally challenge police misconduct[.]" Opening Brief of Appellant at 28. However, this ordinance targets an individual's refusal to leave the scene of an investigation after that individual acts in a manner to obstruct a police officer, and not the mere observation and verbal criticism of police activity. We previously noted that this ordinance was a valid time, place, and manner restriction, to the extent that the ordinance might interfere with an individual's right to free speech. See Abercrombie, 85 Wash.App. at 399, 945 P.2d 1132. Patu's attempt to invoke his fundamental rights under the Due Process Clause is misplaced.[2] Patu cannot challenge SMC 12A.16.010(A)(5) as facially vague as applied to others unless he shows that the ordinance is vague as applied to him.
Vague as Applied
Patu argues that SMC 12A.16.010(A)(5) is vague as applied to him because the "to convict" jury instruction (Instruction 3, Clerk's Papers at 64) did not include the requisite element of actual obstruction.[3] The City argues that because *527 Patu proposed this jury instruction, this claim is barred by the doctrine of invited error. Under the doctrine of invited error, a party may not request an instruction and then later complain on appeal that the instruction was given, even if the error is of a constitutional magnitude. State v. Gentry, 125 Wash.2d 570, 645, 888 P.2d 1105 (1995). The Court has held that this doctrine is strictly applied, even if the instruction, when proposed, is standard in this state and is expressly approved by the Court. State v. Studd, 137 Wash.2d 533, 547-49, 973 P.2d 1049 (1999).
Patu argues that the doctrine of invited error must give way to his constitutional right to have the City meet its burden of proving beyond a reasonable doubt every element of the crime of obstruction as charged under SMC 12A.16.010(A)(5). A "to convict" instruction that fails to identify all of the essential elements of the charged crime "produces a `fatal error' by relieving the State of its burden of proving every essential element beyond a reasonable doubt." State v. Smith, 131 Wash.2d 258, 265, 930 P.2d 917 (1997) (citing State v. Eastmond, 129 Wash.2d 497, 503, 919 P.2d 577 (1996)).
There is no question that the SMC 12A.16.010(A)(5) "to convict" instruction was constitutionally deficient because of its failure to require the City to prove the essential element of actual obstruction. Unfortunately for Patu, we are bound by precedent to apply invited error doctrine even in the case of a constitutionally deficient "to convict" jury instruction. In State v. Boyer, 91 Wash.2d 342, 343-45, 588 P.2d 1151 (1979), our Supreme Court held that invited error applied to bar review of petitioner's argument that the trial court erroneously instructed the jury that the requisite element of knowledge of the nature of delivery, for purposes of the crime of delivery of a controlled substance, could be presumed from the act itself, because petitioner had requested the erroneous instruction. Significantly, the Court noted that it
recognized the constitutional requirement that the prosecution bear the burden of proving beyond a reasonable doubt each element of the crime charged. It is against this constitutional test that a challenged instruction may be measured. In this case, however, we do not reach the constitutional issue. The instruction given is one which the defendant himself proposed.
Id. at 344-45, 588 P.2d 1151 (emphasis added).
Similarly, in State v. Henderson, 114 Wash.2d 867, 869-71, 792 P.2d 514 (1990), the Court followed its decision in Boyer and applied the invited error doctrine to bar review of petitioner's argument that the trial court erred in adopting petitioner's proposed attempted burglary in the second degree instruction, because the instruction failed to require proof of the specific crime or crimes actually intended during the attempted robbery.[4] In response to petitioner's claim that constitutional error may be raised for the first time on appeal, the Court responded: "This argument misses the point, however, which is that even if error was committed, of whatever kind, it was at the defendant's invitation and he is therefore precluded from claiming on appeal that it is reversible error." *528 114 Wash.2d at 870, 792 P.2d 514 (emphasis added).
While an obstruction conviction based on an erroneous SMC 12A.16.010(A)(5) "to convict" instruction, such as the one adopted in Patu's case, is grounds for reversal because it omits the essential element of actual obstruction, our review of Patu's claim is barred by his own proposal of the defective instruction. Because Patu's as applied vagueness challenge fails based on invited error, we do not reach his facial challenge of SMC 12A.16.010(A)(5).

PRIOR CONVICTION LIMITING INSTRUCTION
Patu argues that the municipal court's failure to issue a limiting instruction to the jury on the proper use of his prior conviction for false reporting requires reversal of his convictions. The court denied Patu's request to include WPIC 5.05[5] because it reasoned that a general credibility instruction[6] adequately addressed the jury's consideration of the prior conviction. This ruling was clearly erroneous.
A trial court is not required to give a requested instruction when the subject is adequately covered by another instruction. State v. Holbrook, 66 Wash.2d 278, 401 P.2d 971 (1965). But in State v. Brown, 113 Wash.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989) the Court said that when a prior conviction is admitted under ER 609(a)(2)[7] to impeach the testifying defendant's credibility:
[A]n instruction should be given that the conviction is admissible only on the issue of the witness' credibility, and, where the defendant is the witness impeached, may not be considered on the issue of guilt.... Due to the potentially prejudicial nature of prior conviction evidence, these limiting instructions are of critical importance.
113 Wash.2d at 529, 782 P.2d 1013.
In another case, State v. Newton, 109 Wash.2d 69, 74, 743 P.2d 254 (1987), the Court said that "[t]he defendant has the right, under ER 105, to have the judge instruct the jury that prior misconduct may not be used to show conformity." ER 105 appears to create a mandatory rule, as it states that "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."
A limiting instruction is significant when a prior conviction is introduced into evidence, because without such an instruction
[t]he jury may assume, first, that the person with a criminal record has a `bad' general character, and deserves to be sent to prison whether or not they in fact committed the crime in question[, and second,] the jury may perceive the prior convictions as proof of the defendant's criminal propensities, making it more likely the defendant committed the crime charged.
Newton, 109 Wash.2d at 73, 743 P.2d 254 (citation omitted).
But here we conclude that the error arising from the failure to include a limiting instruction was harmless because of the nature of Patu's prior conviction and of the *529 City's case. The record indicates that the City discussed Patu's prior conviction with the jury only for the permissible purpose of attacking his credibility, and did not argue that the conviction made it more likely that Patu was a bad person or that he had a propensity to obstruct the police. Moreover, during Patu's redirect examination, he was allowed to explain that his conviction for false reporting was for using a fake ID when he was 19 years old, in order to get into a night club, and that such use was a common practice among his friends. Under all of these circumstances, it is highly unlikely that the jury used the conviction for any impermissible purpose.
Affirmed.
AGID, C.J., and GROSSE, J., concur.
NOTES
[1] 85 Wash.App. 393, 945 P.2d 1132 (1997).
[2] See, e.g., Colten v. Kentucky, 407 U.S. 104, 109-10, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), involving a disorderly conduct statute:

[Defendant] had no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation at that time. The State has a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction. Here the police had cause for apprehension that a roadside strip, crowded with persons and automobiles, might expose the entourage, passing motorists, and police to the risk of accident.
[3] It is this part of our opinion in Abercrombie that confused both Patu and our court commissioner. Patu believed that we "saved" the ordinance from unconstitutional vagueness by "creating an implied element" of actual obstruction. We hope that it is now clear that we did not "create" this elementit has been in the ordinance all along, albeit difficult to spot due to extremely poor drafting. Our court commissioner understood that we had not created an implied element because we did not reach the question of facial vaguenesswe did not reach that question because Abercrombie did not get past the threshold showing of vagueness as applied to him. But our commissioner thought our interpretation of the ordinance was limited to the case of Abercrombie himself and provided no relief for any other person charged with violating the ordinance. Our decision in Abercrombie does apply to every person charged with violating the ordinance, but not by virtue of a facial vagueness analysis. It applies to every person because the element of actual obstruction has been in the ordinance all alonga fact that may have escaped the attention of the City Attorney's Office until oral argument for this case. We were told that notwithstanding the fact that Abercrombie was issued over four years ago, the City's standard "to convict" instruction had not been brought up to date. We trust that oversight has now been remedied.
[4] This was the controlling law at the time of petitioner's commission of the crime.
[5] WPIC 5.05 states: "Evidence that the defendant has previously been convicted of a crime is not evidence of the defendant's guilt. Such evidence may be considered by you in deciding what weight or credibility should be given to the testimony of the defendant and for no other reason."
[6] "You are the sole judges of the credibility of the witnesses and of what weight is to be given to the testimony of each. In considering the testimony of any witness, you may take into account the opportunity and ability of the witness to observe, the witness's [sic ] memory and manner while testifying, any interest, bias or prejudice the witness may have, the reasonableness of the testimony of the witness considered in light of all the evidence, and any other factors that bear on believability and weight.... Throughout your deliberations you will permit neither sympathy nor prejudice to influence your verdict." Clerk's Papers at 61-62.
[7] ER 609(a)(2) states: "For the purpose of attacking the credibility of a witness in a criminal or civil case, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness but only if the crime ... involved dishonesty or false statement, regardless of the punishment."