# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50802-8-II |
| Respondent, | |
| v. | |
| LEE ALLEN COMENOUT, JR., | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Lee Comenout Jr. appeals his two convictions for first degree robbery, the trial court's setting of a $1,500,000 bail for his release before trial, the State's delays in providing a competency evaluation and restoration services, and the imposition of certain legal financial obligations (LFOs). Comenout contends that (1) his multiple convictions for robbery violated the prohibition against double jeopardy, (2) he received ineffective assistance of counsel, (3) the trial court erred by failing to comply with CrR 3.2 in setting bail, (4) the State violated his substantive due process rights when it failed to provide timely competency services, and (4) the trial court erred by imposing a criminal filing fee, deoxyribonucleic acid (DNA) collection fee, and nonrestitution interest provision.

We hold that review of Comenout's alleged double jeopardy error is barred under the invited error doctrine, and Comenout was not deprived of effective assistance of counsel. We further hold that Comenout's pretrial release claims are moot, and the State violated his substantive due process rights by failing to provide timely competency services. However, the violation does

not warrant dismissal of Comenout's convictions. Last, we hold that Comenout is entitled to relief from the challenged LFOs.

Accordingly, we affirm Comenout's convictions but remand to the trial court to strike the challenged LFOs and nonrestitution interest provision.

FACTS

I. CRIMINAL INCIDENTS

On June 15, 2016, Comenout and his brother embarked on a series of criminal activities. At around 5:30 in the evening, the brothers stopped at the home of Oscar Corro-Garcia, who was in his garage unloading his pick-up truck. The brothers approached Corro-Garcia, and Comenout's brother demanded, at gun point, the keys to Corro-Garcia's truck. Corro-Garcia threw his keys and ran into his home.

The Comenout brothers drove the truck to Olympic Grocery. The brothers entered Olympic Grocery and demanded that Chong Sun Namkung and Myoung Namkung, the store owners, give them their money. Chong and Myoung[1] were the only employees standing near the store counter when the brothers arrived. Comenout's brother flashed a gun and ordered Myoung to open the cash register.[2] The brothers took the cash box from the cash register and put the money in their pockets. Comenout filled the empty box with scratch lottery tickets.

The brothers demanded that Chong and Myoung stay together with their hands up. The brothers took a box of extra cigarettes and cigars and the store's "money bag" with $510 inside

---

[1] We use the Namkungs' first names for purposes of clarity.

[2] The State concedes that Comenout's brother flashed the gun.

from behind the store counter. 6 Verbatim Report of Proceedings (VRP) at 695. One brother reached inside of Myoung's pocket and took about a thousand dollars. The brothers took Chong's cell phone and her bag where she kept spare change. Myoung's coin purse was inside Chong's bag when it was stolen. At trial, the State played a video of the brothers leaving the store with the cash register box full of lottery tickets, Chong's bag, and the store plastic bags that are given to each customer.

The brothers left the store and drove away in the truck. Soon after, the truck collided with another vehicle. Comenout attempted to flee the collision scene, but was apprehended by police while carrying money in both hands. The police found a box with lottery tickets, a box with cigarettes and cigars, a cell phone, and a canvas bag at the scene of the collision.

## II. PRETRIAL EVENTS

The State charged Comenout with three counts of first degree robbery, two counts of second degree assault, one count of third degree theft, and one count of second degree unlawful possession of a firearm.[3] At Comenout's arraignment hearing, the State requested that the trial court set bail in the amount of $1,500,000 due to Comenout's extensive criminal history and warrant history.[4] Defense counsel reserved argument about bail, stating that "Mr. Comenout has a [Department of Corrections] hold and it will allow Mr. Comenout to meet with his assigned counsel and perhaps make a bail reduction, or bail argument, or request in the future." VRP at 6

---

[3] The trial court dismissed one count of second degree assault and one count of second degree unlawful possession of a firearm.

[4] Comenout has 21 prior misdemeanor or gross misdemeanor convictions, 3 previous felony convictions, including a second degree escape conviction, 9 prior bench warrants, and 3 open bench warrants.

(June 17, 2016). The trial court set bail at $1,500,000, but reserved the bail issue "pending further order of the Court." *Id.* at 7. The trial court did not make any written or oral findings.

The trial court entered an order for a competency evaluation under former RCW 10.77.060 (2012) and ordered that Comenout be held without bail on July 29. The competency evaluation began on August 15 and was completed on August 17. The evaluation concluded that Comenout lacked capacity to understand the nature of the proceedings and to assist in his own defense. On August 17, the trial court ordered Comenout to restorative treatment. Comenout commenced restorative treatment on September 23. On December 15, the trial court determined that Comenout was competent to stand trial.

After a finding of competency, the State again requested that the trial court set bail at $1,500,000. In response, Comenout's counsel stated that he did not "have a basis at this point . . . to challenge that." VRP at 9 (June 17, 2016). The trial court granted the State's request, but again did not enter any written findings.

### III. TRIAL

At trial, defense counsel did not question the fact that the robberies took place at Olympic Grocery or Comenout's presence at the scene. Defense counsel's strategy throughout trial focused on Comenout's limited participation in the robberies. He argued that the jury should not find that he was an accomplice because his participation was not "[m]ore than a mere presence." 8 VRP at 1012 (Aug. 1, 2017). Defense counsel also questioned whether the robberies were committed with a deadly weapon. Defense counsel did not question Myoung and limited his cross-examination of Chong to questions regarding her recollection of the gun.

Both the State and Comenout proposed jury instructions. The State's proposed instructions included special interrogatory forms pertaining to the robberies at Olympic Grocery—count IV (robbery against Myoung) and count V (robbery against Chong). The proposed interrogatories stated that if the jury finds Comenout guilty of count IV or count V, the jury must answer the questions in the special interrogatory forms pertaining to that count. The proposed form for count IV is as follows:

> (This special interrogatory is to be answered only if the jury finds the defendant guilty of Robbery in the First Degree, as charged in Count IV.)
> We, the jury, return a special interrogatory by answering as follows:
> **QUESTION**: What property was the basis for your verdict of guilty of Robbery in the First Decree as Charged for Count IV?
> **ANSWER:** (Write "Yes" only in the blank that applies)
> _____ all jurors based it upon only the money taken from the person of Myoung Namkung
> _____ all jurors based it upon only other money or merchandise taken from Olympic Grocery Store.
> _____ all jurors based it upon both the money taken from the person of Myoung Namkung and other money or merchandise
> _____ some jurors based it upon the money taken from the person of Myoung Namkung, and the remaining jurors based it upon other money or merchandise.

Clerk's Papers (CP) at 153. The special interrogatory form for count V is as follows:

> (This special interrogatory is to be answered only if the jury finds the defendant guilty of Robbery in the First Degree, as charged in Count V.)
> We, the jury, return a special interrogatory by answering as follows:
> **QUESTION**: What property was the basis for your verdict of guilty of Robbery in the First Decree as Charged for Count V?
> **ANSWER:** (Write "Yes" only in the blank that applies)
> _____ all jurors based it upon only the cellular telephone taken from the person or presence of Chong Namkung
> _____ all jurors based it upon only money or merchandise taken from Olympic Grocery Store, and not taken from the person of Myoung Namkung
> _____ all jurors based it upon both the cellular telephone taken from the person or presence of Chong Namkung and money or merchandise taken from Olympic Grocery Store, and not taken from the person of Myoung Namkung
> _____ some jurors based it upon the cellular telephone taken from the person or presence of Chong Namkung, and the remaining jurors based it upon the money or

5

merchandise taken from Olympic Grocery Store, and not taken from the person of Myoung Namkung.

*Id.* at 154.

The prosecutor stated that he proposed the special interrogatory forms for count IV and count V to avoid any issues at sentencing or issues on appeal "in case there is a question about what property we're talking about." 8 VRP at 954 (Aug. 1, 2016). The following colloquy ensued regarding the special interrogatory forms:

> [Prosecutor]: So if the Court of Appeals says . . . there's not enough evidence, for example, that the cash register money or the merchandise was stolen or there wasn't enough evidence that the money from his pocket was stolen or there wasn't enough evidence that Chong's cell phone was taken, then the jury has specified. . . .
> If it's simply left at the generic property and the Court of Appeals says . . . we don't know what the jury based their decision on.

*Id.* at 956-57.

> THE COURT: Here we have evidence that there were some things taken . . . from the person of Chong, arguably. I'm not sure where that phone was. But clearly from Myoung, they took money out of his pocket. . . . So I think that you're saying is you want to be careful or certain that . . . there's no question that these are separate units of prosecution.
> . . . .
> [Defense Counsel]: Your Honor, I don't think these special interrogatories are necessary. I think this is a solution looking for a problem, if you will.
> *State v. Tvedt*,[5] . . . addresses this exact issue. I'm going to have a hard time at sentencing, in light of that holding, trying to convince you that this is all one unit of prosecution that should be just one, referring to [Chong and Myoung]. Because what was just pointed out is that they each have a possessory interest, at minimum the items that were taken from the store, and as you point out probably even the items taken from their person. And so they are each jointly entitled to possession of those items. They were each . . . threatened and these properties were taken in their presence. I would love to be able to convince you at sentencing that this is either the same criminal conduct or should be one single unit of prosecution, but I'm not going to be able to do that, given our case law.

---

[5] 153 Wn.2d 705, 107 P.3d 728 (2005).

THE COURT: That's what I've read recently, that's what I was concerned with.

[Defense Counsel]: I don't think this is a concern. I mean, I would like for it to be a concern and, who knows. But, again, I'm going to have a hard time convincing you, given *Tvedt* and other cases like it that deal with this exact scenario: Two people in a convenience store present are robbed and each are co-owners. . . .

I don't think this is necessary. I think this is confusing to the jury. They are going to spend extra time, which isn't the issue maybe, but I just don't think it's necessary. I would ask that you not give it.

*Id.* at 963-65.

The trial court took the matter under advisement, and after a brief recess, the trial court presented the final jury instructions to counsel. The trial court's instructions did not include the special interrogatory forms. The trial court did not address its decision to not include the special interrogatory forms, and neither counsel objected to the trial court's decision to not include the forms from the final jury instructions. The final jury instruction pertaining to count IV is as follows:

To convict the defendant of the crime of Robbery in the First Degree as charged in Count IV, each of the following six elements of the crime must be proved beyond a reasonable doubt:
. . . .
(2) That Myoung Namkung owned, was acting as a representative of the owner of, or was in possession of the property taken;
(3) That the defendant and/or a person to whom he was an accomplice intended to commit theft of the property;
(4) That the taking was against Myoung Namkung's will by the defendant's use or threatened use of immediate force, violence, or fear of injury to Myoung Namkung, or that of a person to whom he was an accomplice.

CP at 191. The jury instruction for count V is identical, with the exception of the victim's name.

The jury instructions also included an instruction stating that

[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

*Id.* at 177.

The jury found Comenout guilty of three counts of first degree robbery, one count of second degree assault, and one count of third degree theft. The jury found that Comenout was armed with a firearm at the time of the commission of all counts.

The trial court found that Comenout was indigent and waived all nonmandatory LFOs. The trial court ordered Comenout to pay a $500 crime victim penalty assessment, a $100 DNA collection fee, a $200 criminal filing fee, $6,904.96 in restitution, and nonrestitution interest.

Comenout appeals the trial court's bail order and his judgment and sentence.

ANALYSIS

I. COMENOUT'S DOUBLE JEOPARDY CLAIM IS BARRED BY INVITED ERROR

Comenout argues that the State violated his constitutional right to be free from double jeopardy. Comenout contends that the jury instructions exposed him to double jeopardy by allowing the jury to convict him for multiple counts of first degree robbery on a single underlying event, thereby exposing him to multiple punishments for a single offense. The State argues that we should not review Comenout's double jeopardy claim because if there was error, Comenout invited the error. We agree with the State and hold that the invited error doctrine precludes review of Comenout's double jeopardy claim.

"'The basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial.'" *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 119, 340 P.3d 810 (2014) (quoting *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009)). "'Even where constitutional issues are involved, invited error precludes judicial review.'" *State v. Henderson*, 114 Wn.2d 867, 871, 792 P.2d 514 (1990) (quoting *State v.*

*Tyson*, 33 Wn. App. 859, 864, 658 P.2d 55 (1983)). In determining whether an error was invited, a reviewing court considers whether the defendant affirmatively assented to the error, materially contributed to it, or benefited from it. *Coggin*, 182 Wn.2d at 119.

The State relies on *City of Seattle v. Patu*, 108 Wn. App. 364, 30 P.3d 522 (2001), *aff'd*, 147 Wn.2d 717, 58 P.3d 273 (2002), and *Henderson*. Both cases applied the invited error doctrine to constitutionally deficient jury instructions and barred review of the defendant's alleged error because the instruction was proposed by defendant's counsel. *Patu*, 108 Wn. App. at 374-75; *Henderson*, 114 Wn.2d at 869-71. In *Patu*, the "to convict" jury instruction omitted an essential element of a crime charged. The court held that the erroneous instruction was grounds for reversal, but the court's review of Patu's claim was barred by his own proposal of the defective instruction. *Patu*, 108 Wn. App. at 375. The court noted that it

> "recognized the constitutional requirement that the prosecution bear the burden of proving beyond a reasonable doubt each element of the crime charged. It is against this constitutional test that a challenged instruction may be measured. In this case, however, we do not reach the constitutional issue. The instruction given is one which the defendant himself proposed."

*Id.* (bolding omitted) (quoting *State v. Boyer*, 91 Wn.2d 342, 344-45, 588 P.2d 1151 (1979)).

Similarly, in *Henderson*, the defendant claimed that an instructional error violated his due process rights to have the jury instructed on the definition of every element of the offense charged. 114 Wn.2d at 869. Because the trial court gave the jury instructions at the defendant's request, the court held that "even if error was committed, of whatever kind, it was at the defendant's invitation and he is therefore precluded from claiming on appeal that it is reversible error." *Id.* at 870.

We have applied the invited error doctrine to an appellant's claim that the jury instructions did not protect a defendant of his right to be free from double jeopardy. *See State v. Corbett*, 158

Wn. App. 576, 591-92, 242 P.3d 52 (2010).  In *Corbett*, the defendant challenged his conviction based on a double jeopardy violation, arguing that the trial court failed to instruct the jury that it must find separate and distinct acts supporting each count.  *Id.* at 591.  As in *Patu*, the defendant was the proponent of instructions that he then challenged on appeal.  *Corbett*, 158 Wn. App. at 591.  The court held that where a defendant proposes the instructions he seeks to challenge on appeal, the invited error doctrine precludes review of the merits of the defendant's alleged error. *Id.* at 591-92.

*Patu*, *Henderson*, and *Corbett* do not directly apply to this case because Comenout did not propose an instruction relevant to his alleged error.  However, Comenout objected to the State's special interrogatory instructions, which would have cured the error that he now challenges on appeal.  Counsel's objection was made after he was informed by the State that the special interrogatories would show whether the jury relied on two separate takings to support two separate robbery charges, curing any "unit of prosecution concern[s]" on appeal.  8 VRP at 963 (Aug. 1, 2016).

Comenout's argument presented an affirmative representation to the trial court that without the special interrogatories, the instructions were a proper statement of the law.  "Under the doctrine of invited error, even where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant has proposed an instruction *or agreed to its wording*." *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005) (emphasis added).  Comenout agreed to the trial court's instructions and objected to only the special interrogatory forms.  His counsel objected on the basis that the forms were unnecessary and agreed with the trial court by conceding that there

were two separate units of prosecution in regard to Chong and Myoung. Comenout cannot now argue the contrary.

We also consider whether the defendant materially contributed to the error or benefited from the error. *Coggin*, 182 Wn.2d at 119. The record clearly demonstrates that Comenout materially contributed to the error. Counsel lodged a lengthy and vigorous objection to the proposed special interrogatories even after having been fully apprised of the harm the State sought to avoid in proposing them.

On appeal, Comenout offers an extensive argument contending that he did not "waive" his double jeopardy claim by his actions below. He relies on numerous state and federal cases which address waiver. *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 522, 242 P.3d 866 (2010); *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974); *State v. Hughes*, 166 Wn.2d 675, 681 n.5, 212 P.3d 558 (2009). Comenout also references *In re Pers. Restraint of Goodwin*, which held that a defendant cannot waive a challenge to a miscalculated offender score by agreeing to a plea deal. 146 Wn.2d 861, 874, 50 P.3d 618 (2002). But the *Goodwin* court differentiated between *waiving* an error and *inviting* an error. *Id.* at 872 (emphasis added) (citing *In re Pers. Restraint of Call*, 144 Wn.2d 315, 327-28, 28 P.3d 709 (2001)). The invited error doctrine "'appears to require affirmative actions by the defendant . . . [in which] the defendant took knowing and voluntary actions to set up the error'" as opposed to a defendant waiving an error "'where the defendant's actions were not voluntary.'" *Call*, 144 Wn.2d at 328 (alterations in original) (quoting *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 724, 10 P.3d 380 (2000)). Where the actions were not voluntary, the court did not apply the invited error doctrine. *Id.*

Comenout took affirmative, voluntary action by objecting to the special interrogatory forms after being informed that the forms would cure any double jeopardy error on appeal. We hold that Comenout's double jeopardy claim is barred under the invited error doctrine.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Comenout argues that he received ineffective assistance of counsel. Comenout alleges that his counsel was deficient because he failed to understand relevant law on double jeopardy, which caused his counsel to (1) object to the preventative measure proposed by the State and invite the potential double jeopardy violation and (2) fail to request a jury instruction to ensure that the jury relied on "'separate and distinct'" acts for count IV and count V to prevent a potential double jeopardy violation. Appellant's Opening Br. at 21. We hold that Comenout has not demonstrated any prejudice resulting from any alleged deficient conduct by counsel.

## A. LEGAL PRINCIPLES

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantees the effective assistance of counsel in criminal proceedings. *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). To show ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). There is a strong presumption of effective representation and the defendant must show the absence of legitimate strategic or tactical reasons for the challenged conduct to overcome the presumption. *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). To show prejudice, the defendant must prove that, but for the deficient performance, there is a reasonable probability that the outcome would have been different. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 487,

965 P.2d 593 (1998). The defendant must affirmatively prove prejudice and show more than a "'conceivable effect on the outcome'" to prevail. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (internal quotation marks omitted) (quoting *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006)). We need not consider both prongs, deficient performance and prejudice, if a petitioner fails to satisfy either prong. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

B. PREJUDICE

Assuming without deciding that Comenout's counsel was deficient, we cannot say there is a reasonable probability that but for counsel's deficient conduct, the outcome of the trial would have differed with regard to counts IV and V.

Comenout argues that his convictions for counts IV and V were based on the same unit of prosecution, thus supporting only one conviction, not two. "[A] unit of prosecution is defined both by the taking of *property* and that the forcible taking be from or from the presence of a *person* against his or her will." *Tvedt*, 153 Wn.2d at 715. Comenout argues that due to the ambiguity of the jury instructions and the prosecutor's closing argument, the jury could have convicted him for the taking of the same property. Thus, his count IV conviction could have been for the taking of the grocery store property "'at large'" in the presence of Myoung, and his count V conviction could have been for the taking of the store property "'at large'" in the presence of Chong. Appellant's Opening Br. at 20.

But Comenout has not made an affirmative showing that the jury actually relied on the same taking of property to support two separate counts. Rather, he shows only the *possibility* it may have done so.[6]

In making an ineffective assistance of counsel challenge, Comenout must show that but for counsel's deficient performance, the outcome of the proceeding would have been different. That is, Comenout must show that had the jury been instructed it needed to rely on separate and distinct takings for each count of robbery, it would *not* have returned guilty verdicts on each count.

Here, the evidence overwhelmingly supports multiple units of prosecution. First, the State presented evidence of a forcible taking from Myoung's person. Myoung testified that a robber took money from his back pocket and took his coin purse while in his presence. To support a separate unit of prosecution, the State also presented evidence of a separate forcible taking of Chong's cell phone and bag.

In addition to personal items of both Chong and Myoung, the State presented substantial evidence of stolen store items. The State's evidence showed that the brothers took the cash box from inside of the cash register, scratch lottery tickets, cigarettes, cigars, and the store's money bag, which contained $510 dollars inside. The jury watched a surveillance video of the brothers leaving the store with the cash box full of lottery tickets, Chong's bag with Myoung's coin purse inside, and store plastic bags that are given to each customer.

---

[6] "[F]lawed jury instructions that permit a jury to convict a defendant of multiple counts based on a single act do not necessarily mean that the defendant received multiple punishments for the same offense; it simply means that the defendant *potentially* received multiple punishments for the same offense." *State v. Mutch*, 171 Wn.2d 646, 663, 254 P.3d 803 (2011).

14

As noted above, Comenout did not challenge these facts at trial. Specifically, Comenout did not challenge the fact that he or his brother took Myoung's coin purse or the money directly from Myoung's back pocket. Nor did Comenout challenge the fact that he or his brother took Chong's phone and her personal bag, which was supported by live testimony and video evidence. Instead, defense counsel's strategy focused on whether the crimes were committed with a deadly weapon and whether Comenout's participation amounted to being an "accomplice." 8 VRP at 1011 (Aug. 1, 2017). Given the compelling and unchallenged evidence of stolen property from Myoung, Chong, and the store at large, Comenout has not shown a reasonable probability that but for defense counsel's conduct, the outcome of the trial would have differed.

### III. PRETRIAL CLAIMS

Comenout argues that the trial court violated CrR 3.2 and multiple state and federal constitutional provisions pertaining to pretrial release and his competency proceedings. Comenout claims that the trial court's failure to comply with CrR 3.2 and the trial court's decision to impose "extreme financial conditions" violated his presumption of innocence, federal prohibitions on excessive bail, as well as his due process and equal protection rights. Appellant's Opening Br. at 23. Furthermore, Comenout argues that the State violated his due process rights when it failed to timely provide a competency evaluation and restoration services. Comenout also argues that his counsel was ineffective for failing to move to dismiss his charge on the basis of the trial court's CrR 3.2 violations and the State's failure to provide a timely competency evaluation and restoration services.

The State argues that we should decline to address Comenout's pretrial release claims because the issues are moot. The State concedes that Comenout's due process rights were violated

when he did not receive a timely competency evaluation or restoration services, but argues that "dismissal . . . is not an available remedy" to this court. Br. of Resp't at 38. We hold that Comenout's pretrial release claims are moot and the State's delay in providing competency services does not warrant dismissal.

A. PRETRIAL RELEASE CLAIMS

Comenout claims that the trial court violated CrR 3.2 and multiple constitutional provisions by setting bail in the amount of $1,500,000 in order to secure pretrial release. Regarding CrR 3.2, he claims that the trial court did not follow the presumption of release on personal recognizance and failed to make the required findings to overcome the presumption of release. We hold that Comenout's pretrial release claims are moot and decline to address them.

An issue on appeal is moot if the reviewing court can no longer provide effective relief. *State v. Cruz*, 189 Wn.2d 588, 597, 404 P.3d 70 (2017). We generally do not consider questions that are purely academic. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). Because Comenout is no longer subject to detention before trial, we cannot provide him with an effective remedy for the trial court's alleged error. Therefore, we hold that his CrR 3.2 and constitutional pretrial release claims are moot.

We may consider a moot issue if it involves matters of continuing and substantial public interest. *Cruz*, 189 Wn.2d at 597-98. In determining whether a case presents an issue of continuing and substantial public interest, we consider (1) the public or private nature of the issue, (2) whether guidance for public officers on the issue is desirable, and (3) the likelihood that the issue will recur. *Id.* We also consider "'the level of genuine adverseness and the quality of advocacy of the issues' [which] serves to limit review to cases in which a hearing on the merits has occurred." *Westerman*

*v. Cary*, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994) (quoting *Hart v. Dep't of Soc. & Health Servcs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988)).

Comenout argues that we should review his pretrial claims because taken together, the "multiple, pervasive violations" of Comenout's rights require us to "reverse and dismiss the convictions." Appellant's Opening Br. at 39. We recently addressed pretrial release issues under CrR 3.2 in *State v. Huckins*, 5 Wn. App. 2d 457, 463-65, 426 P.3d 797 (2018). In *Huckins*, we held that although the issue of setting bail was moot, it was of continuing and substantial public interest. *Id.* at 463-64. Therefore, we interpreted CrR 3.2 and considered the appellant's CrR 3.2 claim on the merits. 5 Wn. App. 2d at 464-65.

In *Huckins*, we held that based on the trial court's written and oral findings, the trial court did not abuse its discretion by concluding that there was a substantial danger that the defendant would commit a violent crime if released on his own recognizance. *Id.* at 467. However, the *Huckins* court held that the trial court failed to consider whether a less restrictive condition or combination of conditions would reasonably assure the safety of the community as required under CrR 3.2(d)(6) to order monetary bail. 5 Wn. App. 2d at 469. Therefore, we held that the trial court abused its discretion in setting monetary bail. *Id.*

Because *Huckins* provides "'an authoritative determination for the future guidance'" on this issue, the second prong of the substantial public interest test is not satisfied. *Cruz*, 189 Wn.2d at 598 (internal quotation marks omitted) (quoting *In re Det. of M.W.*, 185 Wn.2d 633, 648, 374 P.3d 1123 (2016)). Thus, whether the trial court violated CrR 3.2 here no longer is a matter of continuing and substantial public interest. We hold that Comenout's CrR 3.2 claims are moot and

do not raise an issue of continuing and substantial public interest. Therefore, we decline to consider them.

B. COMPETENCY CLAIMS

Comenout argues that a 17-day delay in receiving a competency evaluation and a 37-day delay in admission for competency restoration violated his substantive due process rights guaranteed by the state and federal constitutions.[7]

In 1973, the legislature adopted a comprehensive scheme for addressing competency of criminal defendants. *State v. Kidder*, 197 Wn. App. 292, 312, 389 P.3d 664 (2016). RCW 10.77.050 provides that "'[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues.'" *State v. Hand*, 192 Wn.2d 289, 294, 429 P.3d 502 (2018) (alteration in original) (quoting RCW 10.77.050).

When there is reason to doubt a defendant's competency to stand trial, the trial court must order an expert to evaluate the defendant's medical condition. Former RCW 10.77.060(1)(a). Following the evaluation, if the court finds the defendant incompetent, the court shall stay the criminal proceedings and commit the defendant to restoration treatment. RCW 10.77.084(1)(a). If the defendant's competency is restored following treatment, the court must lift the stay and continue the proceedings. RCW 10.77.084(1)(b).

The legislature established "performance targets" and "maximum time limits" for the timeliness of completion of competency evaluations to stand trial and admission for inpatient restoration services related to competency to stand trial. RCW 10.77.068(1)(a). For completion

---

[7] Comenout asserts that the trial court signed the order for competency evaluation on July 19, 2016, but the order reflects that that trial court signed this order on July 29, 2016.

of a competency evaluation in jail and for admission for inpatient services, the statute provides a performance target of 7 days and a maximum time limit of 14 days, plus an additional 7-day extension "if needed for clinical reasons to complete the evaluation at the determination of the [Department of Social & Health Services]." RCW 10.77.068(1)(a)(i)(A), (B), (ii)(A), (B), (iii)(B).

Our state courts and federal courts have considered this issue and have "determined that the Fourteenth Amendment requires the State to admit an incompetent defendant to a state hospital for competency restoration treatment within seven days of the order calling for treatment." *Hand*, 192 Wn.2d at 296 (citing *Trueblood v. Dep't of Soc. & Health Servs.*, 101 F. Supp. 3d 1010, 1022 (W.D. Wash. 2015), *vacated and remanded*, 822 F.3d 1037 (9th Cir. 2016); *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1123, 1120 (9th Cir. 2003)). The State violates an incompetent criminal defendant's substantive and procedural due process rights when it refuses to admit them to restorative treatment in a timely manner. *Hand*, 192 Wn.2d at 296 (citing *Mink*, 322 F.3d at 1122).

Here, Comenout argues, and the State concedes, that delays in his evaluation for competency and admission for restorative treatment violated Comenout's due process rights. Comenout requests that we "reverse and dismiss" his convictions. Appellant's Opening Br. at 47.

Recently, the Supreme Court considered whether dismissal of criminal charges with prejudice was warranted for a violation of substantive due process rights arising from a criminal defendant's detention before admission for competency restoration treatment. *Hand*, 192 Wn.2d at 293. In *Hand*, after a finding of incompetency, the trial court ordered Western State Hospital (WSH) to admit Hand to restorative treatment within 15 days for treatment. *Id.* at 292. However, Hand remained in custody awaiting admission to WSH for treatment for 76 days. *Id.* at 293. On appeal, Hand argued that the court should dismiss his charges with prejudice. *Id.* at 299. The

court held that the defendant's 76-day detention violated his substantive due process rights, but the violation did not warrant dismissal with prejudice. *Id.* at 302. The court reasoned that statutory mechanisms and case law allow a trial court or a prosecutor to dismiss only an incompetent defendant's charges *without* prejudice. Former RCW 10.77.079(1) (2015)[8]; RCW 10.77.084(1)(c), (d)[9]; *Kidder*, 197 Wn. App. at 317.[10] The trial court and prosecutor did not utilize the statutory mechanisms, and Hand's competency was restored following treatment. *Hand*, 192 Wn.2d at 292-93. Therefore, the court noted that although Hand may bring a civil claim for damages against WSH, dismissal with prejudice was not warranted. *Id.* at 301.

Here, it is not clear whether Comenout seeks dismissal of his convictions with prejudice or without prejudice. Comenout cites no authority directly supporting his assertion either way. However, under *Hand*, dismissal with prejudice is not an available remedy. *Id.* at 301-02. As to

---

[8] Former RCW 10.77.079(1) provides,
> If the issue of competency to stand trial is raised by the court or a party under RCW 10.77.060, the prosecutor may continue with the competency process or dismiss the charges without prejudice and refer the defendant for assessment by a mental health professional, chemical dependency professional, or developmental disabilities professional to determine the appropriate service needs for the defendant.

[9] RCW 10.77.084(1)(c) and (d) provide, in relevant part,
> (c) . . . If the court finds that competency has not been restored, the court shall dismiss the proceedings without prejudice, except that the court may order a further period of competency restoration treatment if it finds that further treatment within the time limits . . . is likely to restore competency, and a further period of treatment is allowed. . . .
> (d) If at any time during the proceeding the court finds, following notice and hearing, a defendant is not likely to regain competency, the court shall dismiss the proceedings without prejudice and refer the defendant for civil commitment evaluation or proceedings.

[10] In *Kidder*, Division One of this court affirmed the trial court's dismissal of a defendant's charges without prejudice under RCW 10.77.084(1)(c) when it found that the defendant will not "'become competent [within] a reasonable period of time.'" 197 Wn. App. at 316.

dismissal without prejudice, neither the prosecutor nor the trial court judge exercised authority under former RCW 10.77.079 or RCW 10.77.084 to dismiss Comenout's charges without prejudice. Comenout does not allege that the trial court abused its discretion for failing to exercise authority and dismiss his charges due to the State's delays. Although Comenout may be able to bring a civil claim for damages, we decline Comenout's request to "reverse and dismiss" his convictions. Appellant's Opening Br. at 47.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Comenout argues that his counsel performed deficiently when he failed to seek dismissal of Comenout's case when the trial court violated CrR 3.2 and when the State failed to provide a timely competency evaluation and timely restoration treatment. Comenout supports his argument by citing to *Kidder*, but in *Kidder*, the trial court made a finding that the defendant was unlikely to have her competency restored within a reasonable time period and dismissed the charge without prejudice. 197 Wn. App. at 317. Thus, *Kidder* is inapposite to this case.

Additionally, Comenout does not argue that it was objectively unreasonable for his counsel to elect not to seek dismissal of Comenout's charges or that there is a reasonable probability that but for the deficient conduct, the outcome of the proceeding would have been different. *Reichenbach*, 153 Wn.2d at 130. RAP 10.3(6) directs each party to provide argument in support of issues presented for review, together with citations to legal authority. "'[P]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012) (internal quotation marks omitted) (quoting *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012)).

We decline to address Comenout's complaint regarding his attorney's decision to decline to seek dismissal of his charges prior to trial.

### III. LEGAL FINANCIAL OBLIGATIONS

Comenout challenges the trial court's imposition of the criminal filing fee, $100 DNA collection fee, and nonrestitution interest. The State concedes that these financial obligations should be stricken from Comenout's judgment and sentence.

In 2018, the legislature amended RCW 36.18.020(2)(h) to prohibit the superior courts from imposing the criminal filing fee on defendants found indigent under RCW 10.101.010(3)(a) through (c). LAWS OF 2018, ch. 269, § 17; RCW 36.18.020(2)(h); *State v. Ramirez*, 191 Wn.2d 732, 746, 426 P.3d 714 (2018). In addition, the legislature amended RCW 10.82.090(1), which now provides that no interest shall accrue on nonrestitution LFOs after June 7, 2018 and that all accrued interest before that date shall be waived. These statutory amendments apply to any case not yet final at the time of their passage. *Ramirez*, 191 Wn.2d at 747.

At sentencing, the trial court found Comenout was indigent and signed an order of indigency. In light of recent statutory amendments and the court's holding in *Ramirez*, the criminal filing fee and the nonrestitution interest provision imposed on Comenout are no longer authorized.

Under the 2018 amendments, the DNA collection fee is mandatory "unless the state has previously collected the offender's DNA as a result of a prior conviction." RCW 43.43.7541;

*Ramirez*, 191 Wn.2d at 747. Here, it is uncontested that Comenout has three previous felony convictions in Washington. Based on the State's concession that the DNA collection fee should be waived, we assume that Comenout's DNA was previously collected. Because the DNA was previously collected, the collection fee is no longer authorized.

We accept the State's concession and remand to the trial court to strike the criminal filing fee, DNA collection fee, and nonresititution interest provision from Comenout's judgment and sentence.

CONCLUSION

We hold that review of Comenout's double jeopardy claim is barred under the invited error doctrine. Comenout was not prejudiced by his attorney's decision not to request a "'separate and distinct'" jury instruction or by his attorney's decision to object to the State's proposed "separate and distinct" jury instructions. Appellant's Opening Br. at 21. We do not address Comenout's pretrial release claims because the issues are moot. Although the State violated Comenout's substantive due process rights by failing to provide timely competency services, the violation does not warrant dismissal. Comenout has not shown that his attorney performed deficiently by electing not to seek pretrial dismissal of his charges nor has he shown prejudice from this decision. Finally, the criminal filing fee, DNA collection fee, and nonrestitution interest provision must be stricken.

No. 50802-8-II

We affirm Comenout's convictions but remand to the trial court to strike the criminal filing fee, DNA collection fee, and nonrestitution interest provision from Comenout's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, C.J.

LEE, J.

24